[No. 3,515.]

# D. S. TERRY, L. T. CARR, AND P. S. WILKES v. THOMAS HAMMONDS AND ORPHA HAMMONDS.

JUDGMENT ON DEMURRER AS A BAR.—A final judgment for the defendant, rendered on a demurrer to the complaint, is not a bar to a subsequent action between the same parties, unless the demurrer went to the merits of the action, and the cause of action in the second suit is the same.

WHEN JUDGMENT ON DEMURRER IS NOT A BAR.—A final judgment for the defendant on demurrer, in an action against a married woman for legal services rendered, in which the complaint did not aver that the services were rendered upon the faith and credit and for the preservation of the separate estate of the defendant, is not a bar to a subsequent suit for the same services in which the complaint contains such averment.

CONTRACT OF MARRIED WOMAN.—While a married woman cannot bind herself in a contract to the extent that a personal judgment can be rendered against her, yet she may contract for services to be rendered for the protection and preservation of her separate estate, which is personal property, and for services thus rendered on the faith of her separate estate, a Court of equity will enforce a lien on it.

SERVICES FOR MARRIED WOMAN IN PROCURING A DIVORCE.—The question spoken of but not decided, whether, for services rendered by an attorney for a married woman in procuring a divorce, and in securing for her a just division of the common property, a Court of equity will enforce a lien on her share of the common personal property, or her separate personal estate, provided the services were rendered on the faith of her separate personal estate.

CONSTRUCTION OF ACT CONCERNING HUSBAND AND WIFE.—The amendment of 1862 to the Act of 1850, defining the rights and duties of husband and wife, takes the personal separate estate of the wife out of the rule laid down in *Maclay* v. *Love*, 25 Cal. 367, that a married woman cannot create a lien on her separate estate, except by a contract in writing, signed and acknowledged by the wife, as prescribed in the sixth section of the Act.

APPEAL from the District Court, Fifth Judicial District, County of San Joaquin.

This suit was commenced January 13th, 1871. The complaint alleged that in 1867 defendant Orpha was the wife of William Wilson, and was the owner of promissory notes given her by said William before her marriage with him, and employed plaintiff Carr to sue said William on the notes, and that he brought the action for her on the faith

and credit of said separate estate and for the preservation thereof, and recovered judgment for the full amount of the notes, which judgment was paid by the defendant William. That plaintiff Carr had assigned to the other plaintiffs his demand for his legal services; that in 1868 defendant Orpha also employed the plaintiffs as attorneys to conduct a suit for her against said William for a divorce and a division of the common property; that she was the owner of separate personal estate, and that plaintiffs conducted the suit and obtained a divorce for her, and ten thousand eight hundred and sixty-six dollars of the community property, and a decree adjudging her the possession and custody of her separate estate, and that they rendered these services upon the faith and credit of her separate estate and for the preservation of the same, and that she had since married defendant Thomas.   The Court below gave judgment for the plaintiffs for their legal services in each case, making the judgment payable out of the separate estate of the defendant Orpha, and the defendants appealed.

The other facts are stated in the opinion.

*Byers & Elliott,* for Appellants.

Neither contract is alleged to have been in writing, and it is not pretended that the defendant ever ratified the same, after she became a *femme sole.*

The liability of a *femme covert* in a case similar to this is directly passed upon in New York, in which it is held that: "A *femme covert* who retains counsel in a suit prosecuted by her for a divorce, is not liable to him in an action for fees unless subsequent to her divorce she promises to pay." (*Wilson* v. *Burr,* 25 Wend. 385.)

Plaintiffs allege that they rendered services in collecting the note, relying upon her separate estate for their pay.   If it had been the intention of the said Orphr to create a lien or incumber her separate property, the power to do that is limited.   (Hittell's Gen. Laws, Art. 3558.)

The statute having provided how a married woman may incumber her property, and it appearing in this case that

nothing of the kind was done, then the contract was simply a personal liability, which the law says a married woman cannot make. And further, equity cannot be invoked to provide a remedy where the statute has made provision by which a legal contract could have been effected. The case of *Maclay* v. *Love* is decisive of the whole matter. (25 Cal. 367.)

We also submit that the judgment was wrong, because the proofs clearly show that in a former action between the same parties, precisely the same cause of action was litigated, and judgment was rendered for defendants; and if the same matter was not litigated, it might have been. (*Gray et al.* v. *Dougherty*, 25 Cal. 366; *Embury* v. *Cannon*, 3 Comstock, 511; *Athearn* v. *Branna*, 8 Blackf. 440.)

*Terry, Carr & Wilkes,* for Respondent.

The wife's right to hold separate property is secured by the Constitution and laws of this State. (Constitution, Art. 9, Sec. 14; Hittell's Dig. Title "Husband and Wife.") The manner in which a lien or incumbrance may be established upon her separate real estate is contained in section six of an Act entitled an Act defining the rights of husband and wife. (Amendment of 1862, Hittell's Digest, Sec. 6, Art. 3568.) Section six, as originally passed May 7th, 1850, defined the mode by which a lien or incumbrance might be created upon the separate property of the wife. (Wood's Digest, Art. 6009.)

The separate estate of the wife may consist of personal or real property, or both. The amendment of 1862 did not define how a lien or incumbrance could be created upon the separate personal estate of the wife, but how it might be created on the separate real estate. In equity a married woman could incur debts upon the faith and credit of separate property. (Schouler's Domestic Relations, 220.) And inasmuch as her creditors have not the means at law of compelling payment of those debts, a Court of equity takes upon itself to give effect to them, not as personal liabilities, but by laying hold of the separate property as the

only means by which they can be satisfied. (Id. 221.) The services of counsel rendered a wife in the prosecution or defense of a suit for a divorce are not necessaries, and the husband is not liable. (Schouler's Domestic Relations, 79, and Note 10, citing 8 Cushing, 404, and other authorities); the case of *Wilson* v. *Burr*, 25 Wendell, 385, cited in appellant's brief, was an action at law.

By the Court, CROCKETT, J.:

Whether a final judgment for the defendant, rendered on a demurrer to the complaint, can be pleaded in bar of a subsequent action between the same parties, depends upon the question: First, whether the demurrer went to the merits of the action; and second, whether the cause of action is the same. If either of these conditions be wanting, the judgment on demurrer does not bar another action. In the case at bar the demurrer in the former action was on the ground that the complaint did not state facts sufficient to constitute a cause of action, and therefore went to the merits. The complaint in the present is substantially the same as in the former action, with the exception that in this case it is averred that the services rendered by the plaintiffs were rendered upon the faith and credit of the separate estate of the female defendant, and in and about its preservation —an allegation not found in the first complaint. This is a material averment, and its absence from the first complaint is probably the ground on which the demurrer was sustained.

Whilst a married woman is incapable of binding herself in a contract to the extent that a personal judgment may be rendered against her for a breach of it, nevertheless it is well settled in England, and in most of the American States, that she may contract for services to be rendered in the protection and preservation of her separate estate, and for services thus rendered, on the faith of the estate, a Court of equity will decree and enforce a lien upon it. (2 Story Eq. Sec. 1401; *Yale* v. *Dederer*, 22 N. Y. 450; *Meyer* v. *Simmes*, 19 Ind. 117; *Van Buren* v. *Swan*, 4 Allen, 330; *Murray* v.

*Barley,* 3 Milne & Keen, 209; *Miller* v. *Newton,* 23 Cal. 554.)
In *Yale* v. *Dederer, supra,* 451, Mr. Justice SELWYN, in de-
fining the limits of the lien upon the separate estate of the
wife, says: "Starting with this point, it is plain that no
debt can be a charge which is not connected by agreement,
either express or implied, with the estate. If contracted
for the direct benefit of the estate itself, it would of course
become a lien upon a well founded presumption that the
parties so intended, and, in analogy, to the doctrine of equit-
able mortgages for purchase money. But no other kind of
debt can, as it seems to me, be thus charged without some
affirmative act of the wife evincing that intention."

In the former action brought by the plaintiffs there was
no averment in the complaint to the effect that the services
were rendered in the preservation of the separate estate of
the wife, and on the faith of that estate; nor even that the
wife had a separate estate. But these material averments
are supplied in the present case, and the two causes of
action are therefore different. It appears, however, on the
face of each complaint that a portion of the plaintiff's de-
mand is for services rendered to the female defendant in
procuring for her a divorce from her former husband, and
a division of the common property; and it is said that to
this extent, at least, the services were not in and about or
for the protection of her separate estate. But, in the
present complaint, it is averred that the wife had a separate
estate, exclusive of her interest in the common property,
and that by the decree in the action for divorce she was
awarded the sum of ten thousand eight hundred and sixty-
six dollars as her share of the common property, " and the
possession and custody of her separate estate, fully described
in said decree, which said decree has been fully executed."
In the former complaint it did not appear that she had a
separate estate, or that it was ascertained and awarded to
her by the decree in the action for divorce. The services
in the divorce case were, therefore, in part at least, for the
benefit of her separate estate. But if they had related
solely to the procuring of the divorce, and the securing to
her a just division of the common property, and if the ser-

vices were rendered on the faith of her separate estate, and of her interest in the common property, we are not prepared to say that a Court of equity would not decree and enforce a lien on one or both for the satisfaction of the demand. It is unnecessary, however, to express a positive opinion on this point, inasmuch as the present complaint avers that the services in the divorce case were rendered on the faith of the separate estate, and for its protection. For these reasons it appears that the cause of action now sued upon is materially different from that declared upon in the former action, and that the judgment in that action is no bar to this.

But the defendants insist that the case of *Maclay* v. *Love*, 25 Cal. 367, is decisive against the plaintiffs on the merits. In that case Mrs. Love was the owner, as of her separate estate, of a tract of land which she caused to be surveyed, and for the services of the surveyor she and her husband executed and delivered to him their promissory note for two hundred dollars, which was afterwards assigned to Maclay, who also had a small demand against Mrs. Love, for goods sold and delivered. The object of the action was to charge the separate estate of Mrs. Love with the payment of these debts. The Court held that under section six, as it stood prior to the amendment of 1862, of the Act of April 17th, 1850, "defining the rights and duties of husband and wife," a married woman, except in special cases, as under the Sole Traders' Act, cannot by contract create a personal liability upon her in any form, and that in this State a Court of equity has no power to enforce any claim or demand as a charge or incumbrance on the separate estate of a married woman, unless such claim has become a charge, lien or incumbrance, by virtue of a contract evidenced by an instrument in writing, signed and acknowledged by the wife, in accordance with the sixth section of said Act. This ruling has been approved in several subsequent cases, the latest of which is *Love* v. *Watkins*, 40 Cal. 558. But the decision was placed solely on the construction of section six of the Act of April 17th, 1850, as it stood prior to the amendment of 1862. The Court construed this section, as it originally

stood, as abrogating in this State the power of a Court of
equity to decree and enforce a lien or incumbrance on the
separate estate of a married woman, unless the lien or in-
cumbrance was created by an instrument in writing, signed
and executed in the manner prescribed by the statute. If
the statute had not been subsequently amended in some
important particulars, we would not feel authorized again
to agitate a question which has so long been considered as
settled. But the original section provided that no sale or
other alienation of any part of the separate estate of the
wife could be made, "nor any lien or incumbrance created
thereon, unless by an instrument in writing, signed by the
husband and wife, and acknowledged by her upon an exam-
ination separate and apart from her husband," etc. In
*Maclay* v. *Love* the Court construed this provision as pro-
hibitory of any other mode of creating the lien or incum-
brance than that defined in the statute. But in 1862 the
statute was amended; and as amended, provides that "no
alienation, sale, or conveyance, of the *real* property of the
wife, or any part thereof, or any right, title, or interest
therein, and no contract, or power of attorney, concerning
or relative to the same, and no lien or incumbrance created
thereon, shall be valid for any purpose, unless the same be
made by an instrument in writing, executed by the husband
and wife, and acknowledged by her, as provided in the Acts
concerning conveyances, in case of the conveyance of her
separate real estate. The personal property of the wife
shall not be sold, assigned, or transferred, unless both hus-
band and wife join in the sale, assignment, or transfer
thereof, except property which she is or may be authorized
by law to sell, assign, or transfer as a *femme sole*." (Stats.
1862, p. 518.) By this amendment the real and personal
estate of the wife are placed upon a different footing. No
lien or incumbrance upon the former can be created except
by an instrument in writing executed in the prescribed
method. But the only limitation on the power of the wife
to deal with her personal property is, that her husband
must join in the sale, assignment, or transfer of it. She is
not, in terms, prohibited from creating a lien or incum-

brance upon it by her own separate act.   But if, ordinarily, the creation of a lien or incumbrance upon it should be deemed to fall within the same category as a sale, assignment, or transfer of it, and therefore requiring the husband to unite in it, I think it could not have been intended that he must unite in creating a lien or incumbrance, which became necessary in order to protect the estate itself from the rapacity, improvidence or fraud of the husband.   It was not intended to disarm the wife so completely of all power over her personal estate that she could create no lien upon it, for the purpose of rescuing it from the clutches of an improvident, unprincipled or fraudulent husband, from whom she was separated and seeking a divorce.   If his consent, under such circumstances, were necessary to the creation of the lien, he would be very certain to withhold it, and thus deprive the wife of the necessary means to conduct the litigation.   In requiring the husband to unite in the sale, assignment or transfer of his wife's personal property, the statute intended to guard her against her own improvidence, incapacity or ignorance of business affairs ; but not to place her and her personal estate so completely in the power of her husband that she could create no debt upon the faith of it, even for the purpose of preventing him from wasting it, or to compel him to account for it.

I am, therefore, of opinion that the amendment of 1862 takes the personal estate of the wife out of the operation of the rule established in *Maclay* v. *Love;* and that, under the circumstances of this case, the consent of the husband was not necessary to the creation of the lien on the separate personal estate of the wife.   The services having been rendered on the faith of this estate, and for its protection and preservation, the Court below properly decreed a lien upon it for the satisfaction of the plaintiff's demand.

Judgment affirmed.

Neither Mr. Chief Justice WALLACE nor Mr. Justice NILES expressed an opinion.