[No. 4522.]

## CHARLES J. BRENHAM AND MARY H. HENSLEY, EXECUTOR AND EXECUTRIX OF THE WILL OF S. J. HENSLEY, DECEASED, v. PETER DAVIDSON, M. J. CASTRO DE DAVIDSON, HIS WIFE, PETER A. DAVIDSON, AND JOHN A. DAVIDSON.

CONSTRUCTION OF DEED.—A deed by which a husband bargains and sells real estate to his wife and son by name, and to such other heirs as the wife may have during the marriage, and after her decease to the children of the marriage, their heirs and assigns forever, vests the estate in the wife and son named in the conveyance in equal parts as tenants in common, in fee simple, even if other children are afterwards born to the spouses.

SALE OF LAND OF INFANT BY GUARDIAN.—The guardian of an infant who is authorized by an act of the Legislature to sell the real estate of his ward, subject to the approval of the sale by the Probate Court, has no authority to accept anything but money in payment of the purchase-money.

ACCOUNT IN EQUITY BETWEEN GUARDIAN AND WARD.—If an infant owns an undivided half of a tract of land as a tenant in common with his mother, and the father and husband, as his guardian, sells the whole tract and receives in payment of the purchase-price a part in money and the other part by canceling, with the consent of the wife, a debt due from the guardian to the purchaser, equity will compel the wife to accept as her portion of the purchase-price the debt thus canceled, and will decree the money paid, to the ward, and the ward has no claim against the purchaser.

ACT AUTHORIZING GUARDIAN TO SELL LAND OF INFANT.—An act of the Legislature which authorizes the guardian of an infant to sell the real estate of such infant, subject to the approval of the Probate Court, for the purpose of enabling the guardian to reinvest the proceeds in other property for the benefit of the ward, is not an assumption of judicial power by the Legislature, and a sale made by the guardian in compliance with it is valid.

APPEAL from the District Court, Twentieth Judicial District, County of Santa Clara.

On the 10th day of March, 1851, defendant, Peter Davidson, was the owner of the real estate hereinafter described, and in consideration of one dollar and love and affection, granted, bargained, and sold it to his wife, the defendant Maria, and to his son, Peter A., and to such other heirs as his wife might have during the marriage, and after her decease to the children of the marriage, their heirs and assigns

forever.   After the conveyance Davidson erected a brick store on the lot.

On the 3d day of March, 1858, the Legislature of the State of California passed an act, which was duly approved that day, entitled, "An Act to authorize Peter Davidson to convey certain real estate," which act is printed in the Session Laws for the year 1858, at page 35, as follows:

"SECTION 1.  Whereas, Peter Davidson, of Santa Clara County, did, by deed executed and delivered on the tenth day of March, A.D. one thousand eight hundred and fifty-one, in consideration of natural love and affection, sell and convey unto Maria Josefa Castro, his wife, and to his son, Peter A. Davidson, then and yet an infant, and to such other children as the said Maria Josefa Castro might thereafter have, a certain parcel of land lying in the city of San Jose, in Santa Clara County, and known on the map of said city as the corner of Market and Santa Clara streets, being west of Market street, and fronting on the same forty.and one-half varas, and being north of Santa Clara street and fronting on the same thirty-nine and one-half varas; and also that certain other parcel of land upon which the dwelling-house of said Peter Davidson then stood and yet stands, fronting on San Pedro street in said city (being fifty varas front on said street) and running back to the Ascequia.

"And whereas said Peter Davidson has, since the making of said deed, placed upon said first mentioned tract of land permanent and costly improvements, consisting of fire-proof brick store rooms, at his own proper cost and expense, amounting to about seventeen thousand dollars.

" And whereas said Davidson is now desirous of disposing of said property, and investing the proceeds thereof in other property for the benefit of his wife and children, who are infants, and whose names are Peter A. Davidson and John Albert Davidson, and is desirous of removing to the county of Contra Costa with his family;

"It is hereby enacted and declared that the said Peter Davidson be and he is hereby authorized and empowered, upon obtaining from the Probate Court of Santa Clara County letters of guardianship upon the estates of his said infant

children, above named, and upon the execution of a bond in double the value of the property, with good and sufficient sureties, who shall be required to justify, in the amount for which they respectively Lecome liable, to sell at public or private sale, as he may deem best, the whole or any part of said property above named, at and for such price as he can obtain therefor, and that upon the making of such sale and confirmation thereof by the Probate Court, as in other cases, the said Peter Davidson be and he is hereby empowered and authorized, in conjunction with his said wife, Maria Josefa Castro, to make, execute, and deliver to the purchaser of said real estate, or any part thereof, good and sufficient deeds in law, which shall be valid and effectual to convey to the purchaser or purchasers thereof all the right, title and estate at law and in equity of the said Peter Davidson, and of his said wife, Maria Josefa Castro, and of their said infant children, John Albert Davidson and Peter A. Davidson, respectively."

Davidson procured letters of guardianship from the Probate Court, gave the required bond, and, in accordance with the provisions of the act, sold the land to Samuel J. Hensley, on the 18th day of February, 1864, for the sum of $18,000. The Probate Court confirmed the sale, and directed the guardian to execute a deed, which he did, on the first day of April, 1864. His wife joined in the deed. Hensley paid to the guardian $11,633 in gold coin, and, with the consent of his wife, the guardian received for the balance of the purchase-money, two demands which Hensley held against him individually—one of $4334, and one of $2000—the latter of which was secured by a lien on the premises. Hensley went into possession. Davidson, at the time this action was brought, had not accounted to his ward for the ward's proportion of the purchase-money. When Davidson made the deed, in 1851, Peter A. was his only child; but in 1853 the second son was born—the defendant, Albert A. The defendants claimed that Hensley acquired no right by the conveyance made by the guardian. The plaintiffs were the executor and executrix of the will of Hensley, who died in January, 1866. This action was commenced in July,

1867, to quiet the title to the property.   Peter A. Davidson answered separately, admitting that he claimed an interest in the land, and claiming that only the sum of $11,666 was paid by Hensley on the purchase-price, and that there remained due to him the sum of $6334, which was a lien on the premises, and he asked the court, if it found the sale good, to give him a lien on the premises for the amount, and to direct that the lot be sold.   The mother and the son Albert A. answered, admitting that they claimed an interest in the premises, and also claiming that if the sale was valid the purchase-money had not been paid, and that they had a lien on the land for it.   The court below held the sale valid, but found that there was due the defendant Peter A. Davidson the sum of $6334 on the purchase-money, and decreed him a lien on the land for the same, and directed it to be sold.   The plaintiffs appealed from that part of the judgment which gave the defendant Peter A. a claim against the testator, and also gave him a lien therefor, and from an order denying them a new trial; and the defendants Peter A. and John Albert appealed from the judgment.

*Houghton & Reynolds*, for the Plaintiffs, argued that as Albert Davidson owned half the property, and the guardian received more than half the purchase-price in gold, that if the guardian erred in applying his debts to Hensley on the purchase, it was for Mrs. Davidson, and not the ward, to complain.   Also, as to Davidson's deed to his wife and children, they argued that the clause "and such other heirs as my said wife may have during lawful wedlock," having reference to parties not in being, was wholly inoperative, and whatever present estate passed by the deed from Peter Davidson vested immediately in his wife and son, Peter A.

They also argued that the act authorizing Davidson to sell was constitutional, and cited *Parkman* v. *Rice* (16 Mass. 329).

*Archer & Lovell*, for the Defendants, argued that the act of the Legislature was unconstitutional; but that the act, if valid, must be strictly followed, and that the guardian did not pursue the act, as he did not receive money for all the

purchase-price, but made the sale to pay his own debt, and the purchaser knew it; and cited *Wormley* v. *Wormley* (8 Wheaton, 421), and *Field* v. *Schieffelin* (8 Johns. Ch. 152). They also argued that Mrs. Davidson had only a life estate in the premises, and was entitled only to the income from one-half or one-third of the purchase-money during her life, and cited *Montgomery* v. *Sturdivant* (41 Cal. 290).

By the Court, CROCKETT, J.:

1. The deed from Peter Davidson to his wife and his son, Peter A. Davidson, vested the estate in them in equal moieties as tenants in common in fee simple.

2. The price for which the property was sold to Hensley was $18,000, of which there was paid in cash to Peter Davidson as guardian, and to his wife, the sum of $11,633, and the remainder of the purchase-money was paid by the discharge by Hensley of a subsisting lien on the property for $2000, and the surrender of a promissory note for $4334 due to him from Peter Davidson. The court finds that at the time of the sale, the husband and wife agreed that these sums "should be applied to and constitute part of the consideration and purchase-price of said land." It is clear the guardian had no authority to accept payment otherwise than in cash for the ward's portion of the purchase-money. But the cash payment exceeded the ward's portion of the whole amount agreed to be paid; and the wife, with the consent of her husband, having agreed that the discharge of the lien and the surrender of the note by Hensley should be accepted as payment *pro tanto*, she will be held in a court of equity to have consented that these sums should be applied towards the satisfaction of her share of the purchase-money. It was competent for her, with the consent of her husband, thus to dispose of any portion of her interest in the fund. (*Terry* v. *Hammond*, 47 Cal. 32.) They must be presumed to have known the law, and that the guardian could not lawfully accept anything but money in payment of the ward's share of the purchase-price; and having agreed that the discharge of the lien and the surrender of the note should be accepted as

payment *pro tanto,* it must be deemed a payment on her account and not on account of the ward.

3. The wife having united in the conveyance to Hensley, she has no longer any interest in the property; and Peter A. Davidson's share of the purchase-money having been fully paid to his guardian in cash, there is no balance due to him from Hensley or his estate.

4. It is contended that the statute authorizing the sale by the guardian is unconstitutional and void, on the ground that in passing it the Legislature assumed to exercise powers of a judicial nature, which it is forbidden to do by the Constitution.

In examining this question it is to be observed, *in limine,* that at the time of the passage of the act there was no general statute in force authorizing the sale of the real estate of a minor, except for his education or maintenance, or the payment of debts. But the statute under review does not authorize a sale for either of these purposes. It does not appear from the recitals of the act that a sale was necessary on either of these grounds. On the contrary, the consideration on which the Legislature apparently acted was that it would be more advantageous to the minor to sell the property and reinvest the proceeds in other property for his benefit—a case not provided for by the general law as it then stood. The act recited that the property was a gift from the husband and father to the wife and minor child, and that after the conveyance he had erected upon it valuable improvements, and desired to remove with his family to another county; and with that view wished to sell the property to invest the proceeds in other property for the benefit of his wife and child. It is then provided that upon qualifying as guardian and executing a bond with sureties in double the value of the property, he may sell it at public or private sale, and upon the confirmation of the sale by the Probate Court, as in other cases, he is authorized, in conjunction with his wife, to execute a conveyance to the purchaser, which shall be effectual to convey the title of the wife and child. It will be observed that there is coupled with the exercise of the power two conditions, viz.: first,

that the sale shall be confirmed by the Probate Court; and second, that the wife shall unite in the conveyance, so that the entire property shall be sold, and not merely the undivided interest of the minor. It was doubtless supposed that a more advantageous sale could be effected in this method than by the sale of only the undivided interest of the child. The general law then in force did not provide for such a case. None of the courts had authority to decree a sale of this character, however advantageous it may have been to the minor; and we must infer that in this condition of affairs the Legislature determined that it would be to the interest of the child to authorize a sale by the guardian, subject to confirmation by the Probate Court, and a reinvestment of the proceeds in other property for the benefit of the ward. It was merely to convert the real estate of the minor into money, on the most advantageous terms, to be reinvested in other property for his benefit—a result which could not be accomplished through the courts as the law then stood. Was this the exercise of judicial power by the Legislature? Waiving the question, whether under the statute it would have been competent for the Probate Court to disaffirm the sale if it had been of opinion that under all the circumstances it would be more advantageous to the minor that the property should not be sold, I think the weight of authority is to the effect that this was not an exercise of judicial power by the Legislature. In *Rice* v. *Parkman* (16 Mass. 326), the case was that, by a special statute, the Legislature authorized the father of minor children, as their guardian, after giving a proper bond to the judge of probate, to sell and convey the lands of the minors and to put the proceeds at interest on good security. There was then in force a general law, under which a license to sell the land might have been granted by the court after appropriate proceedings; in which respect the case differs from the one at bar. A sale having been made by the guardian under the special statute, the minors, on arriving of age, brought an action against the purchaser to recover the land, on the ground that the statute was void. In that case, as in this, it was contended by counsel that, in author-

izing the sale, the Legislature had assumed to exercise powers of a judicial nature. But the court held the statute to be valid, and placed its decision distinctly on the ground that, in passing it, the Legislature did not exercise judicial power. In *Davison* v. *Johonnot* (7 Met. 388), a similar question arose and was decided in the same way. Dewey, J., in delivering the opinion of the court, said: "The act was not a judicial one. The proceeding does not deprive the party of his property. The only effect was to change his estate from real to personal assets, the legal interest in the property, or the avails thereof, being wholly secured for his benefit. It was an act passed by the Legislature upon the application of Davison's guardian, the person whom the law had placed as the legal representative to watch over and protect the interest of the ward, and must be assumed to have been done, not adversely to his interest, but for his benefit." In *Cochran* v. *Van Gurlay* (20 Wend. 365), a similar question was involved, and in delivering the opinion of the court the Chancellor said: "It is clearly within the powers of the Legislature as *parens patria* to prescribe such rules and regulations as it may deem proper for the superintendence, disposition and management of the property and effects of infants, lunatics, and other persons who are incapable of managing their own affairs." In discussing this point, Judge Cooley, in his work "On Constitutional Limitations," says: "This species of legislation may, perhaps, be properly called prerogative remedial legislation; it hears and determines no rights; it deprives no one of his property. It simply authorizes one's real estate to be turned into personal, on the application of the person representing his interests, and under such circumstances that the consent of the owner, if capable of giving it, would be presumed. It is in the nature of the grant of a privilege to one person, which, at the time, affects injuriously the rights of no other." At page 98 he says: "The rule upon this subject, as we deduce it from the authorities, seems to be this: If the party standing in position of trustee applies for permission to make the sale, for a purpose apparently for the interest of the *cestuis que trust,* and there are no ad-

verse interests to be considered and adjudicated, the case is not one which requires judicial action; but it is optional with the Legislature to grant the writ by statute, or to refer the case to the courts for consideration, according as the one course or the other, on consideration of policy, may seem desirable."

Tested by this rule, the statute under review is not unconstitutional, and in passing it the Legislature did not exercise power of a judicial nature. No adverse rights were to be affected by the sale, and there is nothing to indicate that the application was not made in good faith and in the interest of the minor.

In such cases it would doubtless be the wiser policy to refer all such applications to the courts under general laws; and several of the States have incorporated into their constitutions provisions to that effect. But in this and many other States, a contrary practice has prevailed, and estates of great value have been acquired and are now held under special statutes of this character. If the power of the Legislature in this respect is to be restricted beyond the rule to which I have adverted, it must be done by an amendment to the Constitution.

I think the judgment and order should be reversed and cause remanded for a new trial, and it is so ordered.

Mr. Justice RHODES dissented.

WALLACE, C. J., being disqualified, took no part in the decision.