[No. 5153.]

## GRANVILLE H. LINCOLN AND GEORGE S. LINCOLN, PLAINTIFFS, v. J. D. ALEXANDER, S. H. DAVIS, AND GEORGE L. KENNEY, DEFENDANTS.

ESTATES OF MINORS—INTEREST OF GUARDIAN.—The guardian of a minor's estate has an authority coupled with an interest in the estate—not a bare authority.

IDEM—LEGISLATIVE POWER OVER GUARDIAN'S INTEREST.—Where a duly qualified and acting statutory guardian has charge of a minor's estate, the Legislature cannot by special act empower another party to dispose of the estate. Such an act would be judicial in its nature, and therefore unconstitutional.

APPEAL from the District Court of the Twelfth Judicial District, City and County of San Francisco.

The action was ejectment for a portion of fifty-vara lot No. 871 in San Francisco. The father of the plaintiffs acquired title to the premises by original grant. He died intestate in 1853, and letters of administration were taken out by his widow, Priscilla. After proper proceedings had in the Probate Court the property was distributed to plaintiffs and their elder brother, the surviving children of the intestate. No partition was ever had. In April, 1854, the widow intermarried with Francis L. Sargent, and in June following Sargent was duly appointed guardian of the estates of plaintiffs by the Probate Court. He immediately took possession of the property, sold a part of it by authority of the Court, and continued to manage and care for the estates during the year 1857. On the 29th day of April, 1857, the Legislature passed the following act (Stats. 1857, p. 324):

"An Act to authorize Priscilla H. Denham to sell certain real estate belonging to her minor children.

"The People of the State of California, represented in Senate and Assembly, do enact as follows:

"Sec. 1. It shall be, and it is hereby made lawful for Priscilla H. Denham, wife of F. L. Sargent, to sell, either at public or private sale, the whole or any part or portion of the land or lots in the City of San Francisco, known on the official map of said city as fifty-vara lots numbered eight hundred and sixty-eight, (868) and eight hundred and seventy-one, (871) said lots being the property of her minor children, Seth H. Lincoln, Granville H. Lincoln, and George S. Lincoln, by her former husband, Seth S. Lincoln, and it shall be, and it is hereby made the duty of the said Priscilla to retain the proceeds arising from any such sale in her own hands, free and independent of the control of her husband, and to apply the same from time to time exclusively to the maintenance and education of the aforesaid children of Seth S. Lincoln, and to render, whenever she may be required so to do, to the Probate Court of the County of San Francisco, a true and correct account of her receipts and expenditures arising from

the sale of the aforesaid lots, and the maintenance and education of her aforesaid children.

"Sec. 2. Any deed or conveyance hereafter executed by the said Priscilla H. Denham, wife of F. L. Sargent, for either the whole or any part or portion of the real estate mentioned in this act, shall absolutely and forever convey to, and vest in, the grantee or grantees, all the right, title, interest, claim, demand, reversion and remainder, legal and equitable, of the aforesaid minor children of the said Priscilla H. Denham, by her former husband, Seth S. Lincoln, in and to the property described in such deed or conveyance. *Provided, however*, That no sale of said real estate shall be made until after the said Priscilla has filed in the Probate Court bonds satisfactory to the Probate Judge, conditioned that the funds arising from the sale or sales shall be exclusively and entirely appropriated and used for the maintenance and education of said minor children, and *provided, further*, That no deed or conveyance for the said real estate, or any part thereof, shall be valid, or convey any title, unless the sale shall have been confirmed by the Probate Court previous to the execution of such deed or conveyance."

On the 26th day of September, 1857, the said Priscilla made a contract with Wm. H. J. Brooks, for the sale of the premises in controversy, the consideration being the full value at the time. The sale was confirmed by the Court, and a deed was executed, under which the defendants claim title. Sargent joined in both the contract and the deed, but as the husband of Priscilla, and not as guardian. He had no authority from the Court to sell the property. The defendants had judgment. The plaintiffs moved for a new trial, which was denied, and they appealed.

*George F. Baker*, for Appellants.

The deed to defendants was void for want of power in the grantor to convey the premises. She was not the guardian, and had no power except such as was conferred by the special Act of April 29th, 1857. That act was unconstitutional, being in conflict with Art. III of the Constitution. The appointment of a guardian, the control, management, and sale of the wards' estate, are duties pertaining to the judicial and not to the legis-

lative branch of the Government.   They are duties which had
been, and were at the time of the attempted sale under the act
in question, vested in the Courts, and generally, this power was
one belonging to the judicial branch of the Government.   (*Poty*
v. *Smith*, April Term, 1874; 2 Story's Eq. Jur. 1333–4;
*Andrews' Case*, 1 Johns. Ch. 99; Cooley's Const. Lim. 87, and
cases cited; Adams' Eq. 284.)

*W. H. Patterson*, for Respondent, cited *Brenham v David-
son*, 51 Cal. 352.

By the COURT:

In *Brenham* v. *Davidson*, 51 Cal. 352, the statute which was
under review in that case conferred the power of sale on the
guardian of the minor, and the sale was to be approved by the
Probate Court.   The proceeds of the sale were to be reinvested
for the benefit of the minor; and, moreover, no sale was to be
made unless the mother of. the minor, who held an undivided
interest in the property, united in the sale and conveyance.
Under these circumstances we held that the case was one not
provided for by the general law regulating the sale of the es-
tates of minors, and that in passing the statute the Legislature
did not attempt to exercise judicial powers; but that as *parens
patriæ*, it has the power by special act, in a case not provided
for by the general law, to authorize the real estate of the minor
to be converted into money by his guardian, if the Probate Court
approves the sale.   But in the case at bar the minors had a
duly qualified and acting statutory guardian at the time of
the passage of the special act, and the general law provided an
appropriate method by which the Probate Court could order a
sale of the real estate of the minors by the guardian, if a sale
was necessary for their education and support.   The special act
conferred the power of sale, not upon the guardian, but upon
the mother of the minors, who was not their guardian and had
no interest in the property.   Nor were any conditions imposed
upon her, except that she should first execute a bond, to be ap-
proved by the Probate Judge, conditioned that the proceeds of
the sale should be appropriated to the support and education of

the minors, and that the sale should not be valid unless confirmed by the Probate Court previous to the execution of the deed.

In treating of the rights and powers of statutory guardians of the estates of minors, Mr. Schouler, in his treatise on Domestic Relations, (p. 471) says: "The recognized principle is that such guardians have an authority coupled with an interest, not a bare authority"; and such we understand to be the well-settled rule. The statute under consideration attempts to take the estate of the minors out of the hands of their guardian, and to withdraw it from the control of the Probate Court, which, under the general law, had ample authority to order it to be sold and the proceeds to be applied to the support and education of the minors. It wholly ignores the rights and powers of the guardian, who had an authority *coupled with an interest*—withdraws the estate from the jurisdiction and control of the Probate Court, which that Court might rightfully exercise under the general law—and attempts to substitute another person for the guardian, with authority to dispose of the estate absolutely, on no other conditions than those already mentioned. No adjudicated case has been called to our attention, in which the exercise of such a power by the Legislature has been upheld. In his work on Constitutional Limitations, at page 98, Judge Cooley, in discussing legislation of this character, says: "The rule upon this subject, as we deduce it from the authorities, seems to be this: If the party *standing in the position of trustee* applies for permission to make the sale, for a purpose apparently for the interest of the *cestui que trust*, and there are no adverse interests to be considered and adjudicated, the case is not one which requires judicial action; but it is optional with the Legislature to grant the writ by statute, or to refer the case to the Courts for consideration, according as the one course or the other, on considerations of policy, may seem desirable." But in the present case it does not appear that the application was made by a party "standing in the position of trustee," and there were "adverse interests to be considered and adjudicated," to wit, those of the guardian.

Upon the face of the act there is nothing to show that the Legislature was informed that a general guardian of the estates

of these infants had actually been appointed. It is fairly to be presumed that they were ignorant of that fact. At all events, in view of the facts now found by the Court below, the act cannot be permitted to operate, since, under the circumstances, it would be judicial and not legislative in its character, and for that reason unconstitutional.

Judgment and order reversed, and cause remanded for a new trial.