# CHARLESTON.

## FRYE *v.* MILEY.

Submitted September 8, 1903—Decided December 5, 1903.

1. FRAUDULENT CONVEYANCE.

A suit to set aside a fraudulent conveyance under section 2 of chapter 133 of the Code of 1899, instituted for a legal demand by a creditor at large before the debt on which it is predicated becomes due and payable, cannot be sustained. Inadvertent rulings to the contrary in *Chrislip* v. *Teter*, 43 W. Va. 356, and *Bank* v. *Prager*, 50 W. Va. 660, are disapproved. (p. 330).

2. BILL—*Pleadings—Dismissal.*

In such case, though the bill may be sufficient under section 1 of chapter 106 of the Code, it is proper to dismiss it on demurrer, if an attachment has not been sued out under it, before such dismissal. (p. 330.)

3. BILL—*Decree.*

But it is error to so dismiss such a bill without inserting in the decree a clause, saving to the plaintiff the right to prosecute any other proper suit in respect to the matters complained of in the bill, or showing that the cause had not been decided on its merits, as such decree, without such clause, would be a bar to a subsequent suit predicated upon the same facts. (p. 331).

4. JURISDICTION—*Decree—Bar.*
    Where a party brings a suit in equity which cannot be entertained for want of jurisdiction, and permits such a decree to be entered, without objection, as would bar another suit for the same matter, he is not entittled to costs in the appellate court upon a reversal of the decree. In such case, he is not the party substantially prevailing in the true sense of the terms. (p. 334).

Appeal from Circuit Court, Hardy County.

Bill by William H. Frye against John R. Miley and others. Decree for defendants, and plaintiff appeals.

*Modified.*

W. M. GAMBLE, for appallant.

BENJAMIN DAILEY and H. B. GILKESON, for appellees.

POFFENBARGER, JUDGE:

William H. Frye complains of the dissolution of an injunction and dismissal of his bill, by a decree of the circuit court of Hardy County. It appears from the bill that, on the 18th day of February, 1902, John R. Miley executed his negotiable note for the sum of $1,517.75, payable to the order of Annie L. Miley nine months after date, with interest from date, at the Shenandoah Valley Bank of Winchester, Virginia, and endorsed by the said Annie L. Miley, G. W. Miley and P. J. J. Walker, and then delivered to said Frye. The note was given for the purchase money of property purchased by said John R. Miley at a sale made by Frye. On the 22nd day of September, 1902, about seven months after the date of the note, two months before its maturity, Frye instituted this suit, and, at October rules, following, filed his bill, setting forth in detail conveyances by John R. Miley, Annie L. Miley, George W. Miley and P. J. J. Walker of all the real estate, and practically all the personal property, owned by each and every one of them, made between the 17th day of July, 1902, and the date of the institution of the suit, alleging all of said conveyances to have been made for the purpose of hindering, delaying and defrauding the plaintiff in the collection of his said debt, and praying that each and all of them be set aside and the real estate subjected to the payment of the debt, and that Annie L. Miley, George W. Miley, and P. J. J. Walker be restrained, by injunction, from transferring or assigning certain purchase

money notes, given in consideration of the conveyances, and
Fannie V. Pease, J. W. Miley and William M. Snyder from pay-
ing certain notes to the parties alleged to be holders of them.

The injunction was awarded on the 11th day of September,
1902, and, on the 29th day of May, 1903, the bill was held in-
sufficient on demurrer, the injunction dissolved and the bill dis-
dismissed.

This decree is based upon the theory that a suit to set aside
conveyances on the ground of fraud cannot be instituted by a
creditor whose debt is not due; and on the further ground that
if an attachment would, in such case, be maintainable and give
equity jurisdiction to charge the land with a lien in favor of the
creditor, the bill does not pray an attachment, and the record
does not show any affidavit therefor, nor any application to the
court for an order of attachment.

Prior to the enactment, in 1849, of what is now section 2 of
chapter 133 of the Code of this state, a creditor could not re-
sort to a court of equity to impeach a conveyance for fraud,
without having first reduced his demand to judgment. This made
it a lien upon the debtor's real estate, and, the fraudulent con-
veyance being an obstruction to the enforcement of the lien,
equity interposed for the removal of the obstruction. When the
property, fradulently conveyed and sought to be subjected, was
personal property, the creditor was required, not only to obtain
a judgment, but also to take out execution and have it levied, or
returned, so as to show that he had exhausted all legal remedies.
*Chamberlain* v. *Temple,* 2 Rand. 384; *Tate* y, *Liggat,* 2 Leigh
84; *Kelso* v. *Blackburn,* 3 Leigh 300; *Rhodes* v. *Cousins,* 6
Rand. 189; *Wallace* v. *Treacle,* 27 Grat. 479.

In the absence of statutes conferring jurisdiction in equity at
the instance of creditors at large, the general rule is that there
is no such jurisdiction. There are exceptions to the rule, it is
true, but this case does not fall within any of them. "Occasional
exceptions may be found in some states to the rule that equity
will not interfere at the instance of a simple contract creditor.
But the exceptions prove the force of the rule." Wait Fraud.
Conv. section 53. This author, in the same section, analyzes the
cases which are supposed to establish these exceptions and sub-
stantially denies their soundness. He concludes by saying:
"Creditors will, as a rule, find these exceptional cases not easy

to support." To the same effect see Bump on Fraud. Conv. section 535, where it is said: "Equity has jurisdiction of fraud, but it does not collect debts. A creditor must establish his demand at law, and obtain a lien upon the property before the transfer interferes with his rights or he has any title to claim relief in equity. No creditor can be said to be delayed, hindered or defrauded by any conveyance until some property out of which he has a specific right to be satisfied is withdrawn from his reach by a fraudulent conveyance." *Adler* v. *Fenton*, 24 How. (U. S.) 407; *Williams* v. *Tipton*, 5 Humph. (Tenn.) 66, 42 Am. Dec. 420; 5 Enc. Pl. & Pr. 468.

The reasons assigned for this rule are that a court of law is the proper forum in which to establish debts; that the aid of a court of equity is given for the enforcement of a lien and the removal of obstructions in the way of execution at law; that equity will not aid any person until it is made certain that he has a claim upon the debtor; and that a creditor at large has no right to interfere with the debtor in the disposition of his property. 5 Enc. Pl. & Pr. pp. 470-473.

Section 2 of chapter 133 of the Code of 1899 does away with this rule by providing that a creditor, before obtaining a judgment or decree for his claim, may institute a suit in equity to set aside fraudulent conveyance, and, in such suit, have all the relief which he would be entitled to after obtaining a judgment or decree for his claim. This statute gives such creditor a lien upon the property fraudulently conveyed from the time of the commencement of the suit in equity. *Wallace* v. *Treacle*, 27 Grat. 479; *Clark* v. *Figgins*, 27 W. Va. 663; *Foley* v. *Ruley*, 50 W. Va. 158; *Sweeney* v. *Sugar Co.*, 30 W. Va. 443; *Geiser Mfg. Co.* v. *Chewning*, 52 W. Va. 523.

But for this statute, it is plain that no such suit could be brought. It is an enabling statute, doing away with the rule which prevented relief under certain conditions. It does away with that rule only to the extent of the right given by the statute, namely, to sue in equity to annul a fraudulent conveyance before reducing the claim to judgment. Whether such suit can be brought before the debt is due is an entirely different matter. This last question came before the Virginia court of appeals in *Duvries* v. *Johnson*, 27 Grat. 805, and the court divided evenly upon it, Judges Moncure and Anderson standing for the affirma-

tive of the proposition, and Christian and Staples for the negative. It is, therefore, no precedent, and Judge Anderson, who wrote the only opinion filed, cites no authority whatever for his position. A later Virginia case, *Simon* v. *Ellison*, 22 S. E. 860, holds that, "Suit attacking a conveyance as in fraud of creditors cannot be maintained by creditors whose claims are not due." It is said that this Court in *Chrislip* v. *Teter*, 43 W. Va. 356, has held that such suit may be maintained for a debt not due. It appears from the statement of the case that the debt was not due, and that the suit was maintained, but the point cannot be regarded as having been adjudicated in that case, for it seems never to have been brought to the attention of the court. Not a word of comment on that phase of the case is found in the opinion and there is nothing in it to suggest that counsel relied upon it or brought it to the attention of the court. Even if it be considered as an adjudication, it is clearly the result of inadvertence rather than consideration. *Miller* v. *Zeigler*, 44 W. Va. 484, and *Bank* v. *Prager & Son*, 50 W. Va. 660, are urged and relied upon as supporting the position taken by counsel for the appellant. What has been said of the case of *Chrislip* v. *Teter* applied to that of *Bank* v. *Prager & Son*. Neither in the opinion nor in the briefs, so far as a hasty examination of the latter reveals, is there any mention of the fact that the debt of the plaintiff was not due, as a material point in the case. It cannot be regarded as a sedate and considerate decision on that point. In the other case, *Miller* v. *Zeigler*, the proceeding was by attachment and the attachment was held good. Therefore, the jurisdiction which was taken and maintained stood upon an entirely different ground from that urged in this case, and the decision and views expressed in the opinion afford no support to the position taken by the appellant here. JUDGE BRANNON says in the opinion in that case: "But the bill, while setting up a fraudulent transfer, does so only as evidence to sustain the attachment, and does not go for the property transferred. Hence the bill could not be sustained, independently of the attachment, on that ground."

In Alabama, there is a statute similar to ours, providing that a creditor who has not acquired a lien for his debt may sue in equity to set aside a fraudulent conveyance. The supreme court of that state, although most liberally expounding the statute

against fraudulent conveyances, holds that such suit cannot be predicated upon a debt not yet due. *Jones* v. *Massey,* 79 Ala. 370; *Freider* v. *Lienkauff,* 92 Ala. 469; *McGhee* v. *Bank,* 93 Ala. 192; *Gibson* v. *Furniture Co.,* 93 Ala. 579. The court said, in *Jones* v. *Massey*: "The purpose and operation of the statute are to dispense with the necessity of obtaining a judgment at law, thereby establishing the justness of the demand, and to confer on a creditor without a lien the rights of a judgment creditor, so far as a judgment was essential to the jurisdiction of the court. The statute does not exempt such suit from the general rule, which prevails in equity as well as at law, that no suit can be maintained before a cause of action has accrued; and does not confer on a creditor the right to bring a bill to subject property to the payment of his debt, before its maturity, and before he is authorized to maintain an action at law on the demand." In *Freider* v. *Lienkauff,* the court said: "Confessedly no suit, at law or in equity, can be maintained upon the debt which has not matured."

This seems to be the construction put upon such statutes in most, if not all, the states where they exist. Thus, in Maryland, it is held that the jurisdiction of equity is not thereby so extended as to warrant the appointment of a receiver to take charge of the property or an injunction to restrain the debtor from disposing of his property. *Uhl* v. *Dillon,* 10 Md. 500; *Hubbard* v. *Hubbard,* 14 Md. 114; *Balls* v. *Balls,* 69 Md. 388.

Of such statutes, 5 Enc. Pl. & Pr., at page 477, says: "But they do not authorize the filing of a bill before the maturity of the debt, nor do they, unless it is expressly so provided, authorize a bill to enjoin a contemplated disposition by the debtor of his property." Mr. Hogg, in his valuable work, entitled Equity Principles, at section 183, says: "But no suit can be maintained to set aside a conveyance as fraudulent, unless the debt upon which the plaintiff's suit is predicated, is due and payable at the time the suit is brought."

A very substantial reason suggests itself at this point for so limiting the effect of the statute. The commencement of suit under it gives a lien and priority of lien over the claims of all creditors at large subsequently suing. To hold that one whose debt is not due may acquire it, confers upon him a great advantage not expressly given by the statute. It also overturns the

general rule upheld by both courts of law and equity, that no suit can be maintained until a right of action accrues. Such right does not accrue until the maturity of the debt. The legislature has seen fit to give a right of action for a debt not due as well as a lien, under another statute, section 1 of chapter 106 of the Code, of 1899, saying, "And such attachment may be sued out in a court of equity for a debt or claim, legal or equitable, whether the same is due or not." The legislature having so far authorized a suit for a debt not due, and failed to provide for it except by attachment, there is no ground for the presumption of an intention that such right should be further extended. In so far as the cases of *Chrislip* v. *Teter,* 43 W. Va. 356, and *Bank* v. *Prager & Son,* 50 W. Va. 660, holding that a suit, under section 2 of chapter 133 of the Code, may be maintained for a debt not due, they must be disapproved and overruled.

Much is said in the brief of counsel for the appellant on the subject of the odium of fraud in the eye of a court of equity and the extent to which it vitiates transactions into which it enters. All this is granted, but it does not rise to the question presented here. The inquiry now is, not the extent to which equity may go in relief against fraud when the court has acquired jurisdiction, but when and how the jurisdiction may be invoked. It is a question of time when the remedy sought may be had.

As already indicated, a creditor has a remedy against his fraudulent debtor by attachment in a suit in equity, before the debt is due, and counsel for appellant here insists that the bill ought not to have been dismissed because it shows sufficient ground for an attachment. But no attachment was ever taken out or applied for. Whether, in order to give jurisdiction in such case, the attachment must be sued out at the institution of the suit, and the bill show, by proper allegations, that it is a suit by attachment, it is unnecessary to say. It is certain that, in order to confer such jurisdiction, an attachment must be taken out or asked for at some stage of the proceeding. Nor is it necessary to say whether, in addition to the allegations of the bill sworn to, there must be an affidavit setting forth the grounds of the attachment. It seems, however, that there should be. *Taylor's Exr.* v. *Cox,* 32 W. Va. 148; *Cirode* v. *Buchanan.* 22 Grat. 205. Hogg's Equity Principles, at section 37, says: "It would

seem, on principle, that in all those instances wherein suit is brought to enforce a purely legal demand in equity, the bill should aver such facts as to show on its face that the law of attachment has been invoked in aid of the court's jurisdiction." But the author admits that decisions hold that the rule is not quite so strict.

There is a very short paragraph in the bill charging that all the conveyances were made for the purpose of giving preferences among the creditors of the parties to the note. In addition to this, there is an averment of the insolvency of said parties. But the bill does not indicate the existence of antecedent debts to secure which the conveyances were made. One deed of trust is alleged to have been made to secure what may have been an antecedent debt, but it is not averred to have been antecedent, but the property thereby conveyed was twelve head of cattle and plaintiff says in his bill he is informed that they have been driven to market and disposed of. One or two other deeds of trust are set out, reciting that the debts thereby secured were for money loaned at the time of the execution of the instruments. Most of the conveyances are, on their faces, absolute, not purporting to have been given to secure debts. It is deemed unnecessary to go through, and analyze, in this opinion, all these conveyances, for the purpose of showing that the bill is insufficient under the preference statute. In this respect, there is an absolute want of that certainty and definiteness required in such bill.

The decree complained of sustains the demurrer to the bill, dissolves the injunction, dismisses the bill and gives the defendants their costs, without putting in any clause saving to the plaintiff the right to prosecute any other proper suit for relief in the premises. Obviously, he is entitled to relief after the maturity of the debt by just such a suit as he has brought, if the allegations of his bill be true. Moreover, if he had sued out an attachment in this suit at its inception or at any time before it was dismissed, upon a sufficient affidavit, or possibly upon the facts set forth in his bill verified by affidavit as it is, he might have had relief without waiting for the maturity of his debt. Then ought the court to have put into the decree a saving clause? This depends upon whether the decree would bar another suit for relief in respect to the same matters.

It is a decree upon a demurrer sustained. By demurring, the

defendants admitted the facts alleged in the bill. In any subsequent suit, they would be estopped to deny those facts, if this decree remains unreversed. The facts are admitted in favor of the plaintiff and do not estop him, but, upon those facts, there has been an adjudication against him, and, by that adjudication, unless reversed, he is forever barred from prosecuting a suit for the same cause of action upon the same facts. *Res judicata* ties the hands of both parties. *Buford* v. *Adair,* 43 W. Va. 211; *Stockton* v. *Copeland,* 30 W. Va. 674.

In *Gould* v. *Railroad Co.,* 91 U. S. 526, 533, Mr. Justice Clifford, after reviewing many authorities, lays down the following rules as deducible from them:

"(1)   That a judgment rendered upon demurrer to the declaration or to a material pleading, setting forth the facts, is equally conclusive of the matters confessed by the demurrer as a verdict finding the same facts would be, since the matters in controversy are established in the former case, as well as in the latter, by matter of record; and the rule is, that facts thus established can never be contested between the same parties or those in privity with them."

"(2)   That if judgment is rendered for the defendant on demurrer to the declaration, or to a material pleading in chief, the plaintiff can never after maintain against the same defendant, or his privies, any similar or concurrent action for the same cause upon the same grounds as were disclosed in the first declaration; for the reason that the judgment upon such a demurrer determines the merits of the cause, and a final judgment deciding the right must put an end to the dispute, else the litigation would be endless."

"(3)   But it is equally well settled, that, if the plaintiff fails on demurrer in his first action from the omission of an essential allegation in his declaration which is fully supplied in the second suit, the judgment in the first suit is no bar to the second, although the respective actions were instituted to enforce the same right; for the reason that the merits of the cause, as disclosed in the second declaration, were not heard and decided in the first action." The syllabus of this case reads as follows: "If judgment is rendered for the defendant on demurrer to the declaration, or to a material pleading in chief, the plaintiff can never after maintain against the same defendant or his privies any

similar of concurrent action for the same cause upon the same grounds as were disclosed in the first declaration; but, if the plaintiff fails on demurrer in his first action from the omission of an essential allegation in his declaration which is supplied in the second suit, the judgment in the first suit is not a bar to the second."

As to when a judgment upon a demurrer is a bar to a subsequent suit, see *Bissell* v. *Spring Valley Township,* 124 U. S. 225; *McLaughlin* v. *Doane,* 40 Kan. 392; *Insurance Co.* v. *Smith,* 117 Mo. 261, 297; *Skinner* v. *Hock. Musser & Co.* 16 Ia. 23; *Terry and Others* v. *Hammons et al,* 47 Cal. 32; *Robinson* v. *Howard,* 5 Cal. 428; *Eslep* v. *Larsh,* 21 Ind. 190; *Wilson* v. *Ray,* 24 Ind. 156; *Campbell* v. *Hunt,* 104 Ind. 210; *Los Angeles* v. *Mellus,* 58 Cal. 16; *Gray et al* v. *Gray et al* 34 Ga. 499; *Carlin* v. *Brackett,* 38 Minn. 307; *Johnson* v. *Pate,* 90 N. C. 334; *Felt* v. *Turnure,* 48 Ia. 397; *Bouchad* v. *Diaz,* 3 Denio (N. Y.) 238; *Aurora City* v. *West,* 7 Wall 82; *Gilman* v. *Rives* 10 Pet. 298.

"A decision upon a demurrer which has, however, clearly gone to the merits of the case, by being based distinctly upon a specific allegation of the facts touching the substance of the action or the defense, is an effectual bar to further litigation; and upon the facts admitted it is held to be as conslusive as a verdict; and this will be true in regard to such facts, though the second litigation, being between the same parties, is not upon the same cause of action." Big. on Est. 56.

The conclusion resulting from an examination of the record in the light of these principles is, that another suit by attachment, based upon the same facts as it would have been, and will still be, barred, by the decree in this cause. Whether a second suit, under section 2 of chapter 133 of the Code, brought after the maturity of the debt, would be barred is not so clear. A new essential fact, namely, the maturity of the debt, would appear in the case, and it would not be the same matter as that determined in the present suit. This, however, we do not decide as it is unnecessary; but as it would clearly bar a proceeding by attachment upon the same facts, a remedy to which the plaintiff was entitled, as clearly appears from the allegations of the bill, the court ought not to have pronounced such a decree, but should have dismissed the bill without prejudice. In failing to do this,

the court erred, and, for this reason, the decree must be modified. *Carberry* v. *Railroad Co.*, 44 W. Va. 260; *Vandorn* v. *County Court*, 38 W. Va. 267; *Christian* v. *Vance*, 41 W. Va. 754.

Ought the appellant to have costs in this Court? In *Vandorn* v. *County Court* and *Christian* v. *Vance*, costs were given to the appellees, as the parties substantially prevailing, but, in those cases, nothing was said in the court below against the failure to put in the clause, "without prejudice." In *Carberry* v. *Railroad Co.*, costs in this Court were awarded the appellant, but objection to the decree for want of saving clause, was made in the court below. In this case, no such objection appears and the appellant stands as did the appellants in the two cases above mentioned in which costs were awarded the appellees.

There are two reasons in those cases, and in this one, for refusing costs to the appellant. He brought his suit in a court which could not entertain it, and thereby superinduced the error of which he has the right to complain. He is also in fault, in having remained silent when the decree was entered. Had he objected to it and asked that it be made to show that the dismissal was for want of jurisdiction or that it was to be without prejudice, his situation would be far better, and like that of the appellant in *Carberry* v. *Railroad Co.*, and there would probably have been no necessity for his coming here at all. On the ground of their having been in fault, the appellants in *Freer* v. *Davis*, 52 W. Va. 1, were refused costs. In doing so, this Court followed the Supreme Court of the United States in *Railroad Co.* v. *Swan*, 111 U. S. 397, in the opinion in which the question is fully discussed. The reason of that opinion as quoted in *Freer* v. *Davis*, 52 W. Va. 16, clearly applies here.

For the reasons above given, the decree complianed of is to be amended so as to save to the appellant the right to prosecute any other proper suit, in respect to the matters complained in his bill, and then affirmed as amended, and costs in this Court are to be adjudged to the appellees, as the parties substantially prevailing.

*Modified.*

MILLER, JUDGE, (*dissenting.*)

I do not agree to the fourth point in the syllabus. It is the duty of the trial court to pronounce, and have entered on its

record, proper decrees and judgments in cases before it. Parties to the action ·or suit have no legal control of this duty, and should not be held responsible for a failure therein. If such an error be committed in this respect that it can be corrected only by this Court, on appeal or writ of error, the party injured, who is compelled to apply for such correction, should be allowed his costs, occasioned thereby. This should be the rule in such case, because the erroneous decree or judgment is entered, presumably at the instance of the party, who recovers costs, and who would be benefited by such erroneous decree or judgment, should the same be permitted to stand.

BRANNON, JUDGE:

I concur with JUDGE MILLER in the above note.