# CHARLESTON.

CHRISLIP *et al. v.* TETER *et al.*

Submitted February 2, 1897—Decided April 21, 1897.

1. EQUITY PLEADING—*Fraud.*

When fraud is sufficiently alleged, with proper parties to a bill, a demurrer will not lie. (p. 364.)

2. EQUITY JURISDICTION.

"When a court of equity takes jurisdiction of a cause for one purpose, it will go on and dispose of the questions involved to avoid a multiplicity of suits." *Hanly* v. *Watterson,* 39 W. Va. 214 (19 S. E. 536,). (p. 365.)

3. REVERSAL—*Appellate Court—Review on Appeal.*

"Where a decree sought to be reversed is based upon depositions which are so conflicting, and of such a doubtful and unsatisfactory character, that different minds and different

judges might reasonably disagree as to the facts proved by them, or the proper conclusion to be deduced therefrom, the Appellate Court will decline to reverse the finding or decree of the chancellor, although the testimony may be such that the Appellate Court might have pronounced a different decree if it had acted upon the cause in the first instance." *Smith* v. *Yoke*, 27 W. Va. 639. (p. 366.)

4. FRAUDULENT CONVEYANCE—*Decree—Error.*

When, in a suit to set aside a deed of conveyance as fraudulent and void as to plaintiff's debt, and to sell the real estate therefor, the court ascertains and decrees that it is so fraudulent and void, it is error not to decree further, and set aside said deed and provide for the sale of the property conveyed to pay the debt. (p. 366.)

5 FRAUDULENT CONVEYANCE—*Decree—Error.*

In any such suit it is error to decree the sale of another tract of land of the defendant for the satisfaction of said debt, the conveyance of which has not been attacked, or said tract mentioned in the pleadings, and upon which plaintiff has no lien. (p. 367.)

6. FRAUDULENT CONVEYANCE—*Appellate Court—Jurisdiction.*

In such suit, where the defendant filed his answer in the nature of a cross bill, and praying affirmative relief, and the court failed to take any action thereon, or to adjudicate in the matter of said affirmative relief, in the absence of such action there is nothing of which the Appellate Court can take jurisdiction. (p. 367.)

Appeal from Circuit Court, Barbour county.

Bill by Chrislip Bros. against John Teter and others. Decree for plaintiffs, and defendants appeal.

*Reversed.*

DAYTON & DAYTON, W. T. ICE, and F. O. BLUE, for appellants.

SAMUEL V. WOODS, for appellees.

MCWHORTER, JUDGE :

On the 13th day of May, 1893, Chrislip Bros. sold John Teter their stock of merchandise at Peck's Run, Upshur county, by the following written agreement: "This article of agreement, made and entered into this the 13th day of May, 1893, between Chrislip Bros., of the first part, and John Teter, of the second part, all of Peck's Run, Upshur County, West Virginia. Said party of the first part agree

to sell their entire stock of goods, consisting of dry goods, notions, boots, shoes, hats, caps, hardware, queensware, drugs, and patent medicines; in fact, everything,—store furniture, stove, scales, coops, cases, tables, lamps, corn, meat, wool, and in fact all things not herein mentioned that belong to the business. All of the above named goods sold at city cost, with ten *per cent.* on. Said party of the first part is to take a house and lot in Burnersville, West Virginia, the same house that Page Henderson now lives in, including saddler shop, blacksmith shop, stable, *etc.*, at eight hundred dollars; six hundred dollars in cash to be paid the first day of June, 1893; one thousand dollars the 1st of October, 1893; the remainder in October, 1894. All with interest from date. The stock of goods to be invoiced in May, 1893, when said party of the second part is ready. Either party forfeiting the contract to pay to the other party one hundred dollars. Witness our hands and signatures. Chrislip Bros. John Teter." The goods were invoiced on May 22, 1893, and Teter made his two notes of that date for one thousand three hundred and four dollars and sixty cents each, payable on or before the 1st day of October, 1894,—one with interest from date, the other not mentioning interest. At the April rules, 1894, Chrislip Bros. filed in the clerk's office of Barbour county circuit court their bill in chancery against John Teter, Lloyd A. Teter, Burton I. Teter, Catherine Teter (guardian for said Lloyd A. and Burton I. Teter), John Teter and Granville Teter (executors of Alva Teter, deceased), Ira Ward, and Edward E. Tutt, alleging that on the 20th of May, 1893, defendants Lloyd and Burton Teter were infants, seventeen and nineteen years old, respectively; that on that day their mother was appointed by the county court of Upshur county their guardian, and thereafter had charge of their property, personal and real; that the estate of the infants was all derived by the will of their father, Alva Teter, and amounted to about ten thousand dollars; that Granville Teter and John Teter qualified the 27th of February, 1893, as executors of Alva Teter; that on the 13th of May, 1893, they sold the stock of merchandise as set forth in the above-written contract, and exhibited two notes of one thousand three hundred and four dollars and sixty cents each, alleging that one of them was assigned for value to

Ira Ward, and that both notes remained unpaid. Further, that they had a claim against Teter, assigned to them by E. E. Tutt, for one hundred and fifty dollars, which was unpaid. Alleging the insolvency of John Teter; that a judgment at law against him would be unavailing; that he was about to leave the State and reside out of the same, and had declared his purpose to do so, and had rendered himself unable to meet his obligations, and had moved to Barbour county, to his mother-in-law's; but on the 22d of May, 1893, said John Teter was believed to be practically out of debt and was then owner of real and personal property worth about ten thousand dollars, and upon the faith and credit thereof plaintiffs permitted him to become indebted to them; that his property consisted of two hundred acres of land, worth at least seven thousand dollars, on which he resided, and had horses, cattle, farming utensils, *etc.*, worth two thousand dollars, and other personal property; that he was also then the owner of the said merchandise, worth five thousand dollars. Further charging that soon after becoming indebted to them he began a systematic and fraudulent disposition of his property, and on the 1st day of October, 1893, sold said stock of merchandise, which he had been retailing for some time, and from time to time replenishing, to Ira Ward, at the price of two thousand three hundred dollars, the same then being worth five thousand dollars, and received in payment therefor from Ward a tract of one hundred and eleven and one-half acres of land, called the "White Land," and paid said Ward the sum of five hundred dollars in money in said exchange, and borrowed from him one thousand dollars, and immediately incumbered the same land with a vendor's lien in his favor for one thousand five hundred dollars; that on the 17th of February, 1894, with fraudulent purpose he incumbered the same tract of land with six hundred dollars, which he borrowed from D. W. Dix and T. E. Kidd, practically incumbering said land for its selling value, and rendering it unavailing to other creditors, and with like fraudulent intent sold all his personal property; that before the sale of all the personal property, on the 23d of November, with like fraudulent intent, by deed he conveyed to his infant brothers, Lloyd and Burton, the farm of two hundred acres, for the

pretended consideration of six thousand six hundred and fifty dollars and seventeen cents, reciting in the deed that the one thousand and twenty-four dollars and thirty cents was in hand, and for the residue, five thousand six hundred and twenty-five dollars and eighty-seven cents, his two infant brothers executed to him their note payable the 4th of December, 1894, and retained a vendor's lien on said land to secure the same, which note Teter had ever since been trying to trade off to whatever person might be foolish enough to buy or discount the same, but refused to discount or sell the same to plaintiffs, who offered to cash the same, less the amount of the said debts. And charging that Lloyd and Burton, as well as their guardian, had notice of such fraud; that at the time of the sale of all his property he was in debt to the amount of six thousand seven hundred and twenty-four dollars, which indebtedness was also known to Lloyd and Burton and their guardian, all of whom were near neighbors, and on terms of the closest intimacy; that the said infant brothers and guardian had notice that he was about to leave the State; that plaintiffs tried to buy his land, and offered to cash the infants' note, and he refused to do it, and they offered him a bonus of two hundred dollars if he would secure their debts, and he refused to do that; that they then requested him to name the sum that would induce him to secure them, which he declined to do, and declared that before he would do so he would "do worse"; that, when they offered to buy the land, John Teter declared to three reputable men that the said two infant brothers wanted him to sell the land, and let plaintiffs go unpaid, but, to deceive plaintiffs, declared at the same time that he would sell the same to any other person for five dollars per acre less than to his said brothers, because they suggested such perfidy to him. Plaintiffs charged that all the said defendants Teters were combining together to hinder, delay, and defraud them; that plaintiffs had filed in Upshur county a *lis pendens*, setting forth the object and title of this suit. And prayed that the deed executed by John Teter on November 23d to Lloyd and Burton be declared fraudulent and void as to the debts of the plaintiffs, and their said assignee, Ward, and the same be set aside as to said debts, and that said debts be declared liens, from the

institution of this suit, upon the lands so conveyed, and that the land be sold to pay the debts of the plaintiffs and their said assignee, and for general relief.

The defendant Catherine Teter, guardian, made her answer, denying all fraud or knowledge of fraud or attempted fraud upon the creditors of John Teter. Alleging that the sale was fair and *bona fide.* Denying the insolvency of John, or that he was attempting to avoid the payment of his just debts. Alleging that he was the owner of a valuable farm in Roane county, fully paid for; that a valuable consideration was paid for the lands, upon the terms agreed; and that she consented to the purchase, believing it to be for the best interest of the parties interested. The infant defendants, in their own name, filed their answer, denying all allegations of fraud, or any knowledge of fraud. Alleging that it was a *bona fide* sale to them; that the money had been paid, and showing that the whole purchase money due to John Teter was paid, down to about one thousand three and seventy dollars. Averring that they had agreed to pay a full and valuable consideration for the land,—more than the same could have been sold for to others,—and expressly denying every allegation of fraud, or imputation of fraud, in respect to the purchase by them of said land, and allegations charging them with fraud in the payment for said land. Alleging that at the time of the sale they knew John was in easy circumstances, abundantly able to pay all his debts and liabilities, and have a large surplus left. Charging that plaintiffs well knew and advised and urged John to make the sale of the tract of land to them, and stated to him that it was the best thing he could do; that the price offered for the land was the full value of it, and, after the sale was made, informed John that he had made an excellent sale to them, and got more for it than any other person would have given. Denying the insolvency of John. Alleging that he was living in Roane county, where he had purchased a valuable farm, paid for with funds received from them for the land he sold them, on which he had plenty of farming implements and personal property; that John sold his stock of goods to Ira Ward for much less than their true value, and that they were advised that said sale was procured by the false scheming of plaintiffs with said Ira Ward; that

they were attempting to oppress said John Teter, and have his creditors oppress him, so as to force him to sacrifice said stock of goods in the sale made to said Ward, while, as respondents charged, plaintiffs were partners with said Ward in the purchase of the goods, and received the full benefit of the fraudulent scheme perpetrated by them upon John. Alleging that the vendor's lien retained in the deed from Ward to John Teter on the White land was fraudulent, fictitious, and without value, and obtained without the consent of John. Denying that he had adopted a systematic sale of his property for the purpose of defrauding his creditors, or making sale of the same for a like purpose. John Teter also filed his demurrer, and, without waiving his demurrer, made answer denying every allegation of fraud. Denying insolvency; that he was ever about to leave the state, or reside out of it. Alleging that he was perfectly solvent and able to pay all his indebtedness; that he was the owner of a valuable farm in Roane county, fully paid for, worth two thousand five hundred dollars or three thousand dollars. Admitting that he sold his stock of merchandise to Ira Ward for the price of two thousand three hundred dollars, as set out in the bill, and took in exchange for said stock of merchandise a farm of one hundred and eleven and one-half acres of land, and further paid said Ira Ward five hundred dollars in addition to the goods traded; that he gave a vendor's lien on the White land, but it is not true that it was done to dely or defraud the creditors. Charging that the plaintiffs had full knowledge of the transaction, and that the one thousand and five hundred dollar lien was retained by Ward as a mask to hide himself and the plaintiffs while they might defraud and ruin him; that the one thousand and five hundred dollars was made up as follows: Five hundred dollars difference between the stock of merchandise and the farm, and a one thousand dollar note due upon the stock of merchandise, for which the plaintiffs were then pushing collection, and that said one thousand dollar note was afterwards and within a very short time, turned over to him by Ward, acting for the plaintiffs. Charging that the note of one thousand three hundred and four dollars and sixty cents, assigned to defendant Ward by plaintiffs was assigned by them in payment of their interest in the

stock of merchandise. Charging that plaintiffs and defendant Ward were partners at the time of the sale. Admitting that the price paid for the stock of goods was far below its actual value. Averring that such sale was procured by the plaintiffs and defendant Ward, by their connivance, to cheat and defraud respondent. Denying that the sale to his brothers on the 23d of November, 1893, was fraudulent, but the sale was made for valuable consideration, which was paid as shown in the deed. Alleging that the plaintiffs encouraged the sale and sanctioned the action and said that it was the right and proper thing for him to do. Denying that plaintiffs ever made any offer to compromise and settle as set out in the bill. Averring that the actions of the plaintiffs and Ira Ward had been guided by a spirit of avarice, and that they had been confederating and combining together for the ruin of respondent and his infant brothers, and that they had agreed among themselves that one of them "shall hold him while the other skins him," to use their own words and their own language. Praying that it may be ascertained whether or not a partnership exists between plaintiffs, or either of them, and defendant Ward, or existed at the time of the sale of said stock, and, if so, that he be decreed the difference between the selling price of the stock of merchandise and its true value, and that the difference be apportioned between them, and applied to his credit against their demands; that the trust deed to Dix and Kidd be released, and the vendor's lien of one thousand five hundred dollars on the one hundred and eleven and one-half acres of land be released, by the parties to whom they were made. And praying that, after ascertaining the affirmative matter therein prayed, he may have such full and adequate relief as may be adequate in the premises, and recover all his costs.

To this answer Chrislip Bros. and Ira Ward filed their special replications, and, in so far as it charged new matter and sought affirmative relief, denied each and every charge as to fraud on their part, and on the part of each of them, to cheat and wrong said Teter, and especially denying that there was between them, or either of them, and Ira Ward, any interest by partnership in the purchase by Ira Ward of the stock of goods from Teter, and denying

every charge in said answer, as if specially set forth, which fixes, or tends to fix, upon them, or either of them, any fraud, confederation, or combination to wrong John Teter or either of the infant brothers.   And Ira Ward especially denying each and every charge of wrong on his part against John, Burton, or Lloyd; denying any fraud on his part in the purchase by him of said stock of merchandise from John Teter; denying that either of plaintiffs had any interest, direct or indirect, therein, or that any partnership existed between him and plaintiffs; especially denying that there was any fraud in retaining the vendor's lien of one thousand and five hundred dollars on the one hundred and eleven and one-half acres of land, or that said lien was against the knowledge or consent, or against the consent of John Teter.   Ira Ward filed his answer, averring that on the 8th of November, 1894, plaintiffs assigned to him, for value, one of the notes for one thousand three hundred and four dollars and sixty cents, no part whereof had ever been paid.   Then, concurring in the allegations of plaintiffs' bill in charges of fraud against John, Burton and Lloyd Teter, and particularly the averments therein charging fraudulent disposition of property of John Teter for the purpose of hindering, delaying, and defrauding the plaintiffs in the collection of their debts, and the debt assigned to him.   Denying that the stock of goods he bought from John Teter for two thousand and three hundred dollars was worth five thousand dollars, but that he paid, in his opinion, all he could afford to pay for it, and its full value.   And not only adopting the allegations of the bill, in so far as not inconsistent with his answer, but charging that the said fraudulent disposition of the property of John Teter was with notice to the said Burton and Lloyd, who concurred therein, and advised and abetted the said fraud, with intent to hinder, delay, *etc.* Charging that the execution of the deed of November 23d, by John Teter to his brothers was fraudulent, and that the brothers had notice of the fraud, and participated therein.   And praying that it be set aside, as void as to the debt assigned to him; that he be decreed the debt; and for general relief.

The first assignment is that the court erred in overruling the demurrer to plaintiff's bill.   Fraud is sufficiently alleged, with proper parties to the bill, to give jurisdic-

tion; hence the court did not err in overruling the demurrer.

The second asignment of appellants is that it was error for the court not to finally adjudicate the E. E. Tutt account, as between the parties to the suit. Appellees also claim that this is an error to their prejudice. 1 Pom. Eq. Jur. § 181, says that: "When a court of equity has jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of the matters at issue, for this reason: If the controversy contains any equitable features, or requires any purely equitable relief which would belong to the exclusive jurisdiction, or involves any matter pertaining to the concurrent jurisdiction, by means of which a court of equity would acquire, as it were, a partial cognizance of it, the court may go on to a complete adjudication, and may thus establish purely legal rights and grant legal remedies, which would otherwise be beyond the scope of its authority." In *Hanly* v. *Watterson*, 39 W. Va. 214 (19 S. E. 536): "When a court of equity takes jurisdiction of a cause for one purpose, it will go on and dispose of the questions involved, to avoid a multiplicity of suits."

Appellants' third assignment is that the court erred in decreeing that the deed of November 23, 1893, was fraudulent and void, and made with intent to hinder, delay, and defraud the creditors of appellants, and holding that the same was taken by Lloyd A. and Burton I. Teter and their guardian, Catherine Teter, with notice of such fraudulent intent. Appellees claim that it was error not to make a decree setting aside, as fraudulent and void as to their debt and the debt of the assignee, Ward, the said deed of November 23d of John Teter to his brothers. A large mass of testimony was taken touching the question of fraud in the sale and conveyance by John Teter to his infant brothers, Lloyd and Burton, as well as to the sale of the stock of goods by John Teter to Ward, and concerning all other transactions between plaintiffs and defendants John Teter and Ira Ward, and the fraudulent disposition of his personal property by John Teter with intent to hinder, delay, and defraud his creditors. I have carefully read and considered all the depositions taken in the case, and find a great conflict in the evidence. There can be little doubt,

if any, that if there was any fraud intended on the part of John Teter, the grantees and their guardian had knowledge of it. The note of Lloyd and Burton Teter for five thousand six hundred and twenty-five dollars and eighty-seven cents, was given for the deferred payment on the land, dated November 23, 1893, and not being due until December 1, 1894, yet the vendees, by October, 1894, had made payments on the note to John Teter, so that they owed less than one thousand four hundred dollars; the principal part of said payments being in cash, and they, too, having full knowledge of his indebtedness to plaintiffs. I am not inclined to disturb the opinion of the court in holding the conveyance of November 23, 1893, to be fraudulent and void as to plaintiffs' and Ward's debts, and am sustained in this by the ruling of this Court in *Smith* v. *Yoke*, 27 W. Va. 639: "Where the decree sought to be reversed is based upon depositions which are so conflicting, and of such a doubtful and unsatisfactory character, that different minds and different judges might reasonably disagree as to the facts proved by them, or the proper conclusion to be deduced therefrom, the Appellate Court will decline to reverse the finding or decree of the chancellor, although the testimony may be such that the Appellate Court might have pronounced a different decree if it had acted upon the cause in the first instance." On finding that the conveyance of November 23, 1893, was made by the said John Teter with intent to hinder, delay, and defraud his creditors, especially as to the plaintiffs' and defendant Ira Ward's debts, and of which fraud the defendants Burton I. and Lloyd A. Teter and their guardian had full notice before and at the time of said conveyance, and therefore said conveyance is fraudulent and void as to the plaintiff's and Ira Ward's debts herein decreed to them, the court should have set aside the said conveyance, as to said debts, and decreed the sale of said land to satisfy the same; there not being a sufficient amount of the purchase money still unpaid and due from said Lloyd and Burton to pay off said debts.

Apellants' fourth assignment of error is in decreeing the conveyance of the Roane county land to be fraudulent and void for the purpose of hindering, delaying, and defrauding appellants' creditors, and especially decreeing a

sale of said lands under the pleadings and proof in the cause. And appellees assign the same error as being to their prejudice "because there were no allegations in the bill filed by them in respect to the Roane county land acquired on the 21st of September, 1894, after the institution of their suit, and, having no lien thereon, they therefore acquired no lien, under section 2, chapter 74, of the Code, and they sought none by the institution of this suit and the filing of their bill." The Roane county land, or the conveyance thereof, is not mentioned, attacked or set up in any of the pleadings in this cause, and therefore can not be a subject matter for decree in the cause. *Coaldale M. & M. Co.* v. *Clark, etc.* 43 W. Va. 84 (27 S. E. 294); *Shoe Co.* v. *Haught,* 41 W. Va. 275 (23 S. E. 553); and *Roberts* v. *Coleman,* 37 W. Va. 143 (16 S. E. 482).

The fifth error assigned is that the court below refused to adjudicate and determine the rights of the parties alleged in the affirmative relief prayed for in the answer of John Teter to plaintiffs' bill. The court not having passed upon the questions arising upon the allegations contained in the answer of defendant John Teter in the nature of a cross bill, and praying for affirmative relief, there is nothing of which this Court can take jurisdiction touching this point, in advance of such action. The decree of the circuit court complained of must be reversed, and cause remanded for further proceedings to be had therein according to the principals therein laid down.

*Reversed.*