# CHARLESTON

## HERSHMAN *et al. v.* STAFFORD.

Submitted September 15, 1905.    Decided December 12, 1905.

1.    EASEMENTS—*Obstruction—Injunction.*
    "A mandatory injunction will lie to cause an obstructed or closed private way to be cleared and opened for the use of the owner."—*Boyd* v. *Woolwine*, 40 W. Va. 282.    (p. 461.)

2.    ALTERATION OF INSTRUMENTS.
    Where an agreement is prepared between adjoining land owners, for a private way through their lands, and signed by all

but one of the parties, and, in order to obtain his signature, one who had signed the agreement, procured the same to be materially changed as to the route of the proposed road through the lands of the party not signing, the agreement is of no effect as to one who had signed it, but did not know of, or consent to, the change. (p. 462.)

3. EASEMENTS—*Obstructions—Injunction—Parties.*
   Where the bill alleges separate and independent obstructions to a private way by the defendant, it is not error to omit to make another party, who also obstructed the way, a party to the suit. (p. 463.)

Appeal from Circuit Court, Preston County.

Bill by James Hershman and others against William H. Stafford. Decree for plaintiffs, and defendant appeals.

*Reversed.*

Rehearing denied January 9, 1906.

WM. G. CONLEY and R. W. MONROE, for appellant.

P. J. CROGAN, for appellees.

SANDERS, JUDGE:

This is an appeal from and *supersedeas* to a decree of the circuit court of Preston county, perpetuating an injunction sued out from said court by James Hershman and Rebecca Huffman, inhibiting and restraining the appellant, Stafford, his agents, servants, etc., from interfering with the plaintiffs in the use of a private way or road through Stafford's land. The right to the use of the way is based upon an agreement entered into between the plaintiffs, Stafford, and other land owners. The appellant Stafford, filed a special plea, and also answered the bill, setting up two defenses—one that the contract filed with the bill is not the contract which he signed, but that after the same was signed by him and all the parties thereto, except one E. W. Lee, the contract was altered, whereby the route of the proposed road, through the lands of said Lee, was materially changed, without the knowledge or consent of appellant; that other, that after the road was opened through the land of appellant, Isaiah Bolyard, who owned the adjoining land, placed his line fence in such a way as to include the road, which constitutes the obstruction complained of by the plaintiffs, and that their remedy is against Bolyard, and not against appellant.

The appellant assigns as error the refusal of the court to sustain the demurrer to the bill, and claims that even though all the allegations of the bill be taken as true, they amount to simply a repetition of trespasses on the part of appellant, and that the plaintiffs have a complete remedy at law. But this theory cannot be sustained. "A mandatory injunction will lie to cause an obstructed or closed private way to be cleared and opened for the use of the owner." *Boyd* v. *Woolwine*, 40 W. Va. 282. JUDGE HOLT, speaking in this case in regard to the remedy by injunction, after the right to the way has been established, says: "If such is the right of the plaintiffs, no question is made that this is their proper remedy, in fact, their only plain, adequate and complete remedy, seeing that it is the unobstructed use of the road they are after, and not damages for the obstruction of it."

It is claimed that the court erred in holding that the agreement filed with the bill was of any binding force upon the appellant, or that it conferred any rights upon the appellee to the easement in question. This claim is based upon the fact that the contract was changed after it was signed by the appellant. That there was a change made in the contract is not denied, but the appellee claims that the change was agreed to by all the parties. The road provided for in the written agreement was to pass through the lands of one E. W. Lee. At the time of the preparation of the agreement, Lee was not living upon this land, but in another community, and John W. Davis was engaged by the parties to see him and procure his signature to the agreement. Davis, in his testimony, states that he made two trips to see Lee. When he returned the first time, he reported to all the parties that Lee said he would not sign the agreement unless it was changed so as to provide that instead of running through his lands, the road should run "along the line" of his lands. After he went to see Lee the second time, he reported to John Hershman, the appellee, and Hershman proposed to make the change providing that the road should run with the line of Lee's land, and Davis, inasmuch as Lee had given him authority to sign his name to the contract if the change was made, changed the contract in accordance with Lee's instructions, and signed his name thereto. Davis states that

so far as he knows, no one of the parties, except Hershman, was aware of the change, and that Hershman paid him for his services. The appellee contends that Stafford agreed to the change. and he and his son, in their testimony, state that Stafford said the parties to the agreement "would better have it along the line than not to have it at all." Admitting this to be true, it does not show that Stafford gave his consent that the agreement should be changed, and in his testimony he states that he never knew of any change in it until a year after the contract was put to record, and we think the evidence fails to establish the fact that he did agree. As to whether or not the change was material, Stafford testifies that he would not have signed the contract had it provided that the road was to run with the line of Lee's land, as that route was rocky and steep; no road existed there, and one could not be made except at great expense, and on an undesirable grade. The testimony of other witnesses as to the character of this route corroborates Stafford, and that it was a material change is borne out by the fact that in the final order entered in the cause, it recited that the plaintiff, Hershman, having become the owner of the Lee land, agreed that the road might run through that land as provided in the original contract.

Having determined that the contract was changed without the knowledge or consent of Stafford, and before it was signed by all the parties, it must be considered as to whether the change constituted the alteration of a completed contract, or whether there ever was, in fact, any contract between the parties. In 2 Cyc., 145, it is said: "But, on the other hand, where one party subscribes a paper which binds him on the one part, the terms of the paper cannot be changed by the other party before signing or accepting it. This, however, seems not within the contemplation of the usual conception of the term 'alteration,' as dealing with the effect of a material change of a completed instrument, or contract, but rather falls within other general rules pertinent to the elements of a binding contract." It is not denied that the instrument was changed before the name of Lee was affixed thereto. This being so, under the authorities there was no consummated contract between the parties. "A concurrence of minds is essential to the creation of a contract, unless in cases

of estoppel. Therefore a written instrument signed by one party, with the intention that the other shall later sign it, which is changed in any manner altering its legal effect, and by that other signed in its altered condition, does not become binding on the former, unless he learn of and ratify the change; and this, although the alteration be made by a stranger." *McGavock* v. *Morton*, 57 Neb. 385; 77 N. W. 785. See, also, *Sherwood* v. *Merritt*, 83 Wis. 233; 53 N. W., 512; *Pew* v. *Laughlin*, 3 Fed. 39; The Hero, 6 Fed. 526. Hershman having procured the contract to be changed in order to coincide with the wishes of Lee, after Stafford's signature had been affixed thereto, the contract never took effect as to Stafford. There was no meeting of minds, no reality of consent—elements essential to a binding contract.

The appellant claims that upon the filing of his answer the court should have made Isaiah Bolyard a defendant to the suit, it being alleged that he, and not the defendant, had obstructed the road by building a fence in the private way, of which the plaintiff had full knowledge. The bill, however, alleges that the appellant obstructed the way by building fences across it at his line, so as to prevent the plaintiffs from going over and upon the roadway, through the lands of appellant; that the appellee removed said fences and the appellant replaced them, and finally built them of wire, and that appellant threatened bodily injury to appellee if he removed the fences. The fact that appellant placed these obstructions in the road is testified to by several witnesses, and is not denied by him. Therefore, even though Bolyard had obstructed the road, inasmuch as it is distinctly alleged in the bill that the appellant himself obstructed it, and the prayer of the bill is that he be restrained from further doing so, it was not error in the court to omit to have Bolyard made a party, as the appellee would be entitled to maintain a separate suit against him for any obstruction.

In the final decree it is recited that the appellee, Hershman, having become the owner of the land formerly owned by Lee, agreed in open court that the road should run through his land as agreed upon and stipulated in the contract as originally prepared. The contract, having never become effective as to appellant, by reason of the change made

therein, this agreement upon the part of appellee could not operate to make it effective. As to appellant, there not being any agreement, this stipulation could not make valid an invalid instrument.

The decree of the circuit court is reversed, the injunction dissolved, and the bill dismissed.

*Reversed.*