MOUNDSVILLE WATER COMPANY *v.* MOUNDSVILLE SAND COMPANY

(No. 9226)

Submitted February 3, 1942. Decided March 10, 1942.

*Hall, Goodwin & Paul,* for appellant.
*Walter A. McGlumphy,* for appellee.

Rose, Judge:

The Moundsville Water Company prosecutes this appeal from a decree of the Circuit Court of Marshall County by which it was denied a mandatory injunction, damages and other relief against the Moundsville Sand Company, and its bill was dismissed.

The appellant is a public service corporation which operates a number of water wells, a pumping station and supply and distributing lines of pipe by means of which it furnishes domestic water to 3200 consumers in the City of Moundsville. It depends for its supply of water upon eleven wells sunk in the bed of the Ohio River in 1902 and three other wells on land, drilled many years later. From the river wells, a twelve-inch cast iron pipe leads directly to the river shore, from which point it extends downstream along the river's edge, approximately one mile, to a pumping station. Whether this pipe line is above or below low water mark is not made clear. Nor does it appear that the appellant, or its predecessors in title, ever received any authority from the United States or from the State of West Virginia for the drilling and operating of the wells in the river bed or the laying or maintenance of the pipe line in its present position. But by a deed dated February 2, 1914, and recorded February 27, 1914, the appellant obtained a deed from the owners of a part of the river frontage along which the water main extended, conveying certain rights in the following language:

> "* * * the right to maintain and operate its mains and pipes, as now located, along the river

> shore in front of the property of the said parties of the first part, extending northwardly from the mouth of Little Grave Creek, in Washington District, Marshall County, West Virginia, with ingress and egress to and from said lines, and to make all needed repairs thereto, and to lay any additional lines as may be convenient for the use of the said party of the second part, to its wells now used or which hereafter may be installed, provided the same are laid not nearer the bank than the present location; also the right to cross and recross the lands of the said parties of the first part from the county road, but shall pay all damages to growing crops of the said parties of the first part caused thereby."

By deed of lease dated February 1, 1928, the Sand Company acquired the right to operate a sand and gravel business on the same land, which right has been extended by two subsequent leases. Shortly after that date, the Sand Company erected, and has since operated, on the shore of the river, a derrick with a boom and bucket for lifting and conveying sand and gravel from barges and boats in the river to a storage pile back of the derrick. The droppings from this bucket have been permitted to accumulate into a pile estimated by the Sand Company's manager at 200 tons, or the equivalent of a 35-foot cube, which extends from the top of the river bank to its foot and thence out into the water, covering the water line in question.

On the 21st day of July, 1938, the Sand Company drove a row of 29 piles, each thirty feet in length and ten inches in diameter at the top and six inches at the lower end, along the front of the river bank, near its foot, for the purpose of preventing erosion by the stream and caving from the weight of the machinery thereon. This work was done under a permit from the War Department of the United States, which contained the following:

> "Note—It is to be understood that this instrument does not give any property rights either in real estate or material, or any exclusive privileges; and that it does not authorize any injury to

private property or invasion of private rights, or any infringement of Federal, State, or local laws or regulation, nor does it obviate the necessity of obtaining *State assent* to the work authorized. IT MERELY EXPRESSES THE ASSENT OF THE FEDERAL GOVERNMENT SO FAR AS CONCERNS THE PUBLIC RIGHTS OF NAVI-GATION."

When about half of the row of piles had been driven, at about 11:30 A. M., the operator of the appellant's pump station discovered muddy water coming through its line from the river wells, and so notified the appellee's foreman, but consented that the driving of the piles should continue. The appellant has since been compelled to use exclusively water from the land wells, at, as it claims, a great additional expense.

On October 3, 1938, the appellant, for the purpose of locating definitely the break in its water line, caused air to be pumped backward through it. This caused an immediate gushing of water upward from the side of one of the piles and the washing away of sand and gravel about the same, so as to create a large hole, or crater, in the heap of gravel immediately above and around this pile. Demand was then made by the appellant that the appellee remove the sand and gravel from the "right of way" claimed by the former, to restore the broken line and pay certain damages then claimed. This request the appellee refused, but it did offer to allow the appellant the use of its derrick and other machinery "at cost," for such repairs as it wished to make. This suit followed.

The Water Company claims the right to have its line restored and to have the obstruction of its access thereto removed by a mandatory injunction, and, as incidental to this basic relief, asks that damages for the Sand Company's alleged trespasses be ascertained and decreed. The Sand Company, by demurrer, answer and evidence, takes the position that the Water Company has no legal right to maintain its main where it now is, and that, therefore, it cannot complain of the matters alleged in the bill, and

insists that the evidence fails to show that the water line was in fact broken by the driving of the piles.

There is no material conflict in the evidence. The muddy water coming through the line immediately after the driving of one of the middle piles, and the gushing out of a large flow of water around this pile when pressure was applied to the water in the line, in the absence of all evidence to the contrary, justify the conclusion that the line was broken by the driving of the pile. Nor can there be any doubt that the Sand Company, through its manager and foreman, knew approximately the location of the water line. Its workmen, in 1929, had caught and lifted the line out of the water with a dredging bucket, only forty feet from the present break. The location of this accident had been reported to the Sand Company's manager, to whom the location of the line had been described and approximately pointed out by a representative of the Water Company. Before driving the piles, no effort was made to locate or avoid the water line, although it is shown to be covered by nothing but a few feet of water, except where it runs under the Sand Company's gravel pile. We must accept, therefore, as proven facts in the case, that the Sand Company knew the approximate location of the water line, that it could have located it exactly by small effort, that it made no such effort, that the line was broken by its pile driving, and that the Water Company's access to the line for repairs is obstructed by the gravel pile covering the line.

The appellant being a public service corporation, injury to, or destruction of, its source of water may result in disaster to a large number of consumers. Recovery of damages by the Water Company will be wholly ineffectual to rectify the wrong to the public. Damages to 3200 consumers cannot, in any practical way, be ascertained at law. The remedy must be direct, prompt and restorative. Only courts of equity have capacity for giving such relief. Hence, injury to the property or operating facilities of a public utility makes a case peculiarly appropriate for equitable relief. "In a proper case, also, the relief may be

granted to prevent trespasses on * * * property of public service corporations, such as railroads and telegraph and telephone companies, and property devoted to various other uses." 28 Am. Jur., Injunctions, sec. 142, pp. 330, 331. See also: *Midland Valley R. Co.* v. *Jarvis* (C. C. A. 8th), 29 F. 2d 539; *Williams* v. *Atlantic Coast Line R. Co.* (C. C. A. 4th), 17 F. 2d 17; *Atchison, T. & S. F. R. Co.* v. *Spaulding,* 69 Kan. 431, 77 P. 106, 66 L. R. A. 587, 105 Am. St. Rep. 175, 2 Ann. Cas. 546; *Yamhill County Mutual Telephone Co.* v. *Yamhill Electric Co.,* 111 Ore. 57, 224 P. 1081, 33 A. L. R. 373.

It is true that no grant of a right of way for the river wells or the water line in question has been obtained by the Water Company from the United States or from the State of West Virginia; but the wells and line had been maintained and operated for 36 years without objection from these sovereignties. This indicates clearly rights in the Water Company, at least equal to those of a licensee. *Salinger* v. *Woolen Mills Co.,* 70 W. Va. 151, 73 S. E. 312, 39 L. R. A. (N. S.) 350; *Tufts* v. *Copen,* 37 W. Va. 623, 16 S. E. 793; 37 C. J., p. 283. A licensee is entitled, as against a third party, to protection of his property lawfully on the premises, by action or suit, as the circumstances may require. *Case* v. *Weber,* 2 Ind. 108; *Freeman* v. *Underwood,* 66 Me. 229; *Miller* v. *Township of Greenwich,* 62 N. J. L. 771, 42 A. 735; *Keystone Lbr. Co.* v. *Kolman,* 94 Wis. 465, 69 N. W. 165, 34 L. R. A. 821, 59 Am. St. Rep. 905. A different conclusion is expressed in *Elliott* v. *Mason,* 76 N. H. 229, 81 A. 701, 37 L. R. A. (N. S.) 357, which follows a rule we are unwilling to adopt. The appellee emphasizes the proposition that an applicant for injunctive relief must show legal title to the right sought to be vindicated. We would not abridge this rule in the least, but a right long exercised and not disputed by the parties who are in a position to object, will be protected by injunction against trespass. *Sanderlin* v. *Baxter,* 76 Va. 299, 44 Am. Rep. 165; *Falls Village Water Power Co.* v. *Tibbetts,* 31 Conn. 165; *Shirley* v. *Hicks,* 110 Ga. 516, 35 S. E. 782; *Jordan* v. *Woodward,* 38 Me. 423; *Williams* v.

*Riley,* 79 Neb. 554, 113 N. W. 136; *Olmsted* v. *Loomis,* 9 N. Y. 423.

The appellant, therefore, had sufficient right to the maintenance and operation of the river wells and the water line connecting therewith to be entitled to the interposition of a court of equity for the purpose of protection against the trespasses herein shown. But it has another wholly distinct, but quite sufficient, basis for equitable relief. Conceding that, as argued on behalf of the appellee, the deed of February 2, 1914, is futile as a grant of a right of way for the water line "in front of" the property of the grantors therein, by reason of the fact that the grantors had nothing in front of their property which they could grant, yet it is plain that this deed is not a nullity. It distinctly and effectively conveyed to the appellant the right of "ingress and egress to and from said lines, and to make all needed repairs thereto * * *." This is the creation of, and grant to the appellant, of a right of passage across the land of the grantors to the water main in the river's edge—an easement. It is trite to say that equity will protect such an easement against irreparable injury or continuous obstruction. *McNeil* v. *Kennedy,* 88 W. Va. 524, 107 S. E. 203; *Carr* v. *Carr,* 85 W. Va. 209, 101 S. E. 251; *Powhatan Coal & Coke Co.* v. *Ritz,* 60 W. Va. 395, 56 S. E. 257, 9 L. R. A. (N. S.) 1225; *Johnson* v. *Gould,* 60 W. Va. 84, 53 S. E. 798; *Hershman* v. *Stafford,* 58 W. Va. 459, 52 S. E. 533; *Flaherty* v. *Fleming,* 58 W. Va. 669, 52 S. E. 857, 3 L. R. A. (N. S.) 461; *Rogerson* v. *Shepherd,* 33 W. Va. 307, 10 S. E. 632. The undisputed evidence shows a most serious obstruction of the appellant's access to the water main. The appellee has through years accumulated, or permitted to accumulate, from its operation, a huge pile of refuse gravel which covers the water line in front of its plant. Underneath this debris there is a break in the line rendering it unusable. The evidence shows that such breaks, where the line was covered by water only, were readily and cheaply repaired by the employment of a diver; but that to reach the present break, the removal of a largé part of the gravel heap will be necessary. The only practicable method for clearing away this gravel is by use of a mechanical shovel and crane. The construction of

a coffer dam and shoring to prevent the sliding down of the surface on which the Sand Company's derrick stands, will be required. It also appears that the appellee's derrick occupies the only practical site for the machinery with which to do this work; and, as if this were not enough, the evidence clearly sustains the charge that the very break which necessitates these repairs was caused by the act of the appellee, done with such indifference as to approximate closely to wantonness. The appellee's permit from the War Department avails nothing to neutralize its trespass. That permit expressly states that "it does not authorize any injury to private property or invasion of private rights." Nor is the tort condoned by appellee's contention that the water line in question is obsolescent and is a secondary source of supply, or by the fact that the appellant may reach its river wells by laying another line on some other site, or that it owns lands on which other wells may be drilled.

The appellant's bill also sought damages in addition to a restoration of rights. Such relief, may, in a proper case, be awarded as incidental to an injunction. *Williamson* v. *Jones,* 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891; *Chrislip* v. *Teter,* 43 W. Va. 356, 27 S. E. 288. "In order to avoid a multiplicity of suits, and to dispose of the entire matter at once, equity may, in addition to an injunction, decree that defendant pay damages to complainants for all past injury, and in addition to this the court may even render a decree for damages for injury that has occurred since the commencement of the suit, and up to the time of the trial and disposition of the case." 32 C. J., pp. 382, 383.

Accordingly, the decree appealed from is reversed, and the cause is remanded with directions that an order be entered requiring the appellee forthwith to remove from the appellant's line so much of the gravel pile as obstructs ready access thereto for repairs or other proper purposes, and to repair said water line where it is broken by the piling, and restraining the appellee from a repetition of like or similar trespasses; and that damages to the date of compliance with such mandatory order be ascertained and decreed against the appellee.

*Reversed and remanded.*