THE COUNTY COURT OF HARRISON COUNTY, WEST VIRGINIA

*v.*

WEST VIRGINIA AIR SERVICE, INC.

(No. 10000)

Submitted April 14, 1948.   Decided June 22, 1948.

*Robinson & Stump, John S. Stump, Jr.,* for appellant.

*J. Philip Clifford,* for appellee.

RILEY, PRESIDENT:

The West Virginia Air Service, Inc., a corporation, the defendant in the injunction suit brought by the County Court of Harrison County, as owner and operator of the Benedum Airport, a public airport, prosecutes this appeal from and supersedeas to a decree pronounced by the Circuit Court of Harrison County, denying its motion to dissolve the injunction awarded on bill, answer and general replication.

From the pleadings and exhibits it appears that the West Virginia Air Service, Inc., hereinafter referred to as "Air Service", on May 1, 1941, entered into two written instruments with the county court, one denominated an agreement and the other a lease, each by its terms taking

effect as of the 1st day of June, 1941, and running for a period of sixty-seven months to December 31, 1946. By virtue of such instruments Air Service carried on a general flying service, including chartered passenger and freight service; enjoyed an exclusive gasoline concession, for which it paid the county court eight cents for every gallon of gasoline delivered to its tanks; sold new and used airplanes, parts and accessories; made aircraft repairs; and conducted general flight training, including the training of veterans under a Federal statute; and was accorded the full, free and nonexclusive use in common with others of runways, ramps and other conveniences for flying, landings and take-offs, full and free access and ingress to and egress from and between the leased premises and the other facilities, such as hangar space and waiting rooms; and also the exclusive use of certain space to be set aside for display of new and used airplanes; and exclusive use of the school building constructed by Air Service, for use in connection with its training program.

In the early part of 1946 the county court entered into an agreement with Clarksburg Aviation Company, hereinafter referred to as "Clarksburg Aviation", subject to the terms of the foregoing agreements with Air Service, which granted the former, with the exception of the exclusive gasoline rights theretofore accorded Air Service, similar rights on the air field, including the right to establish and continue an air service, embracing both transit and commercial flying; the right to operate a school for instruction in flying; the right to install tanks for the storage of gasoline for its own use; and the exclusive use of certain space in the administration building for display and other purposes.

The county court on the 18th day of February, 1947, executed another paper denominated an "agreement and lease" bearing date January 1, 1947, and expiring December 31, 1947, with the Clarksburg Aviation, wherein the latter was granted the right to use fully and freely and nonexclusively, in connection with others, the landing

fields and facilities, waiting room and other passenger conveniences in the administration building; the right to deal in new and used airplanes; and the right to establish and continue an air service, including both transit and commercial flying for hire, to run a school for instruction in flying and to do and perform such other acts as are related to and connected with the rights and privileges mentioned therein.

In consideration of the foregoing Clarksburg Aviation agreed to pay stipulated rentals for leases of a portion of the school building, and a portion of the locker room in the hangar; to pay the established monthly rental for the storage of its airplanes in the hangar provided therefor; and, further, to pay a sum equal to five per cent of the gross amount received from the operation of its business, except the sale of new and used airplanes, for which five percent and three percent, respectively, of the gross profit, were exacted. It also agreed to buy its aviation gas and oil from the county court, or whoever might later be granted such concession.

The present suit was brought in May, 1947, for the purpose of enjoining and restraining further use of the airport by Air Service, which, the bill of complaint alleges, from January 1, 1947, had, and still continued to trespass on the properties of the Benedum Airport.

After setting out ownership in itself of Benedum Airport, the county court alleges in its bill of complaint that in early summer of 1946, Air Service asked for a new lease and agreement and was informed that the county court did not desire to enter into any new lease upon the expiration of the existing lease and agreement; that the defendant after December 31, 1946, refused to vacate the building used for the school and failed to stop using the airport and facilities. However, the county court arranged a meeting for the 8th or 10th of January, 1947, at which it was suggested that Air Service pay for the use of the airport a percentage of its gross receipts and a stipulated

percentage of the gross profit on airplanes, exclusive of a lease and rental for buildings, and that no right would be granted to store or deal in gasoline and oil. The bill of complaint alleges further that Air Service took the position that its business would not justify such commission and that it would first have to have an audit of its 1946 business, which would be ready in a few days, when it would resume negotiations; that Air Service never resumed negotiations, but did continue to occupy the airport and buildings thereon for its business, without paying therefor; that on March 3, 1947, the county court, being of opinion that Air Service was "stalling" entered an order which was duly served on the latter, forfeiting its right to occupy the airport and buildings and directing that Air Service cease trespassing and pay $2,000.00 as damages for repeated trespasses; that said order was disregarded and the trespasses continued to date of filing of the bill of complaint on May 27, 1947; that Clarksburg Aviation carried on a competing business in 1946, pursuant to its contract and lease, which expired the same date as Air Service's, to-wit, December 31, 1946; and that the county court, on February 18, 1947, entered into the second lease heretofore mentioned with Clarksburg Aviation upon the terms heretofore referred to.

The bill of complaint further alleges that Air Service's trespasses and unlawful acts are in competition with the business of Clarksburg Aviation and have greatly reduced and interfered with the latter's profit; that Air Service's continued trespasses without paying or offering to pay the rates established by the county court in its contract with Clarksburg Aviation have disrupted and interfered with the county court's management of said airport, greatly reducing its revenue and income.

The answer admits that Air Service had sought a new agreement in summer of 1946; avers that in January, 1947, the county court had suggested that terms of a new agreement should provide, exclusive of rent for buildings, for ten percent of the gross receipts of defendant's busi-

ness, other than income derived from the sale of new and used airplanes, which was set at five percent and three percent, respectively, on the gross selling price; denies that it did not intend to enter into any contract or agreement, with the county court; and avers that it has at all times been and now is ready and willing to pay any just and reasonable charge and to give any reasonable security which may be established by order or by agreement.

The answer charges further that the agreement with Clarksburg Aviation, March, 1946, was an effort on the part of the county court to transfer defendant's business, and that it was "an exclusive agreement" in violation of the Civil Aeronautics Administration agreement and void; that it is ready and willing to pay plaintiff on the basis of rates exacted from Clarksburg Aviation, or at any other rate lawfully established by plaintiff, for privilege of doing business at the airport.

Defendant then answers certain interrogatives relating to gross receipts over the period January 1, 1947 to May 31, 1947; denies allegations of intention to unlawfully withhold possession of any buildings and to unlawfully trespass on lands, improvements and facilities of the airport without paying anything therefor, and avers that it is now using, and, as a member of the flying public, is entitled to use the runways and facilities of said airport in common with all others engaged in flying in Harrison County; that at present it is engaged in flight-training of seventy-three residents, all but eighteen being ex-service men; that no one else has personnel or planes sufficient to continue such training; that it is the only person or corporation holding a certificate of convenience and necessity to engage in nonscheduled commercial flying and nonscheduled service for the intrastate transportation of passengers.

The answer also avers that the county court has funds with which to construct more buildings; that rumors were afloat in 1946 to the effect that plaintiff did not intend to

permit Air Service to continue to engage in business after December 31, 1946; that Air Service has purchased a six-acre tract contiguous to the airport on which it has repeatedly offered to construct buildings to house its various activities; and that the county court has refused to grant Air Service an approach therefrom over its properties to the runways of the airport.

The injunction order complained of recites in part that "an injunction is hereby awarded enjoining and restraining the defendants, West Virginia Air Service, Inc., its officers, agents and employees, from further trespassing upon that certain tract of land * * * known as the 'Benedum Airport' and from entering thereon and from using plaintiff's landing field, its ramps, runways, * * * and other conveniences for flying, landing and take-offs, as a port and terminal for defendant's aircraft and from handling, dealing in, repairing, trading in or otherwise disposing of both new and second-hand aircraft and parts and accessories * * * and from continuing to use said airport in defendant's air service business, including both transit and commercial flying for hire, the running of a school for the instruction of students * * *; except that the defendant * * * are not hereby restrained from removing their air craft, * * *."

The injunction as worded, were it not for this appeal, would require Air Service to cease all operations at the airport.

Air Service confines its attack to that part of the injunction decree which deprives it of the use of the runways and flying facilities afforded by the airport, and inhibits it from entry thereon. It takes the position that there is an absence of regulations and a schedule of charges for the use of the runways and flying facilities of the airport, and that in the absence thereof it cannot, as a member of the flying public, be guilty of trespass thereon; and further that the county court is barred from resort to a court of equity to restrain Air Service, its officers, agents, and employees from the use of such facilities.

The record discloses that prior to and subsequent to the incorporation of Air Service certain individuals seem to have dominated the activities of the airport. This same group at the time of the awarding in 1946 of similar rights and privileges to Clarksburg Aviation, charged the county court with transferring Air Service's business to the former. And, after Clarksburg Aviation's contract of 1947, and the filing of the present bill for an injunction, Air Service insists that as a member of the flying public it should not only have access to the runways and other facilities, but that the county court should approve the construction of certain proposed buildings on Air Service's six-acre tract for school and other purposes and grant a right of approach over the airport's property to the runways. In short, Air Service now believes in competition.

The mere fact that Air Service enjoyed unlimited rights prior to Clarksburg Aviation's appearance in 1946, in our opinion, does not guarantee those rights in perpetuity. It seems clear to us that after December 31, 1946, the date of the expiration of both the agreement and the lease, Air Service stood in relation to the airport as any other member of the general public. Its right to use of the buildings formerly occupied under the lease, which question, as indicated by counsel for Air Service, is moot, because possession thereof was obtained from defendant in another proceeding, and its right to use the airport and the facilities incident thereto in connection with an air school, and for engaging in any and all specialized activities, such as the sale of airplanes, airplane parts, gasoline and oil, ceased with the expiration of the agreement and lease. Air Service's conduct in its negotiations with the county court is such that should not appeal to the conscience of a court of equity. With the expiration of its contract, Air Service had no further rights thereunder. Although Air Service continued to use the airport and all the specialized activities formerly enjoyed under its contract, it is apparent the county court early in January, 1947, had shown a willingness to resume negotiations. An offer was made which Air Service's president indicated might be onerous,

adding, however, that an audit would be made to determine its acceptability; but no effort was again made to contact the county court, nor was any counter-offer made. Failure of Air Service to follow up brought about what was. tantamount to the arbitrary discontinuance of negotiations. That being so, it has no right to occupy the airport and use its facilities in the manner of occupancy which continued from the expiration of its lease until the institution of this suit. So this case presents a state of record, which, in our opinion, would prompt injunctive relief. To the extent that after the expiration of its lease Air Service continued to use the airport and its facilities for specialized activities, it was engaged in numerous and repeated trespasses which promise to be continuous, and, in order to avoid a multiplicity of actions for damages, a court of equity has jurisdiction to restrain the same. *Dorsey v. Dorsey,* 109 W. Va. 111, 153 S.E. 146; *Lilly v. Bowling,* 120 W. Va. 169, 197 S.E. 299. This is particularly true in the case of an airport which, by the very nature of things, serves the public generally, and has, as the county court has in the instant case, under Code, 8-11-3, the right of condemnation. The Supreme Court of Illinois said in. *State ex rel. Curren v. Wood,* 391 Ill. 237, 62 N. E. 2d 809, 813: "There is in principle no essential difference, so far as the public interest and the public safety are concerned, between the operation of a public airport and that of a highway, subway, wharf, public park, and the like." This Court in *Moundsville Water Co. v. Moundsville Sand Co.,* 124 W. Va. 118, 19 S.E. 2d 217, 139 A.L.R. 1199, held that a public service corporation is "peculiarly entitled to protection by injunction of its operating facilities used in the public service against unlawful obstruction or continuous trespass, which results, or will probably result, in jeopardizing its public functions." Pt. 1 syl. In the instant case this record clearly shows that the airport and its facilities, subject to certain limitations, are now leased to Clarksburg Aviation, and Air Service is now in the position, through its continuous, unauthorized and unlawful acts, of competing with the business of Clarksburg Aviation. It is true that this division of the business between the

10

two competitors will not directly work a financial loss to the county court should Air Service, as it offers to do in its answer, undertake to pay in accordance with the rates contained in the Clarksburg Aviation's lease; but that is no justification for Air Service's position. Under Code, 8-11, a county court has almost plenary power and control of an airport. Section 4 thereof empowers a county court to "adopt regulations and establish fees or charges for the use of such airport or landing field." In Chapter 11, Acts, West Virginia Legislature, 1947, which was passed March 4, 1947, effective ninety days from passage, Section 6 provides, among other things, that the owner or owners of a public airport may grant or rent "landing rights for airplanes, hangar space, gasoline storage, or handling facilities, ticket or general office space, or any other facilities or rights in connection with such airport or grounds covering or affecting less than the whole thereof, without notice and upon such terms as such owner or owners may deem advisable." If there ever was any doubt concerning the county court's right to grant or rent such privileges, the foregoing section, which took effect prior to the awarding of the injunction, puts the matter at rest. So under the broad wording of this statute, the county court has practically full power, so long as it does not act in a capricious manner or in opposition to the public interest to manage, control and regulate the instant airport as it deems advisable. It is not, in our opinion, under the obligation to make regulations, though it has the power to do so. Having been vested with such broad statutory power, it has the right to grant to Clarksburg Aviation Company, as it did, the privilege of using the airport and facilities in the manner specified in the lease to the exclusion of Air Service, and the definite curtailing of all of its special activities, and in doing so it is not guilty of unjust discrimination. *Miami Beach Air Line Service, Inc., v. Crandon,* (Fla.) 32 So. 2d 153, 172 A.L.R. 1425; *Re Battlefield Airways,* 17 Pa. Corp. Rep. 410, U.S.Av.R. 54. If such control does not reside in a county court or other municipal corporation, owning and controlling a public airport, there might result at this airport, as at other

public airports where the county court or municipal corporation is not given the proper control, such overcrowding that, notwithstanding any regulations which might be made, the safety of the public would be jeopardized, and there would be a constant menace to those using the airport, either as operators, passengers or students.

The offer of Air Service in its answer that it will comply with the conditions of the lease with Clarksburg Aviation is of no moment. The fact remains that for months, as a continuous trespasser, it has occupied and used the airport and the facilities in contravention of the statutory control the county court has of this airport, and to the detriment of the Clarksburg Aviation's business, which, in turn, might jeopardize the ability of that company to comply with the requirements of its lease, and because of the situation portrayed by this record, there being a continuous trespass, the jeopardizing of the county court's rights under the Clarksburg Aviation Company's lease, a remedy at law clearly would be inadequate, and plaintiff is entitled to an injunction unless under the doctrine of the balance of conveniences, as contended by Air Service, the court in the discretion which resides in it in injunction matters should refuse relief. On this basis it is contended that the injury and damage to defendant by the granting of an injunction far exceeds the damage which the county court would suffer in the event an injunction was refused. This Court has recognized the doctrine of the balance of conveniences in *Tennant v. Kilcoyn,* 120 W. Va. 137, 196 S.E. 560, in which a decree of the circuit court granting a temporary injunction was reversed, and the injunction dissolved in the following language: "A temporary injunction should be refused, or when granted should be dissolved on motion, when the injury to the plaintiff by its refusal is slight as compared with the damage which would be done to the defendant by granting it, if defendant should finally prevail, or when the effect of the injunction would be to accomplish the whole purpose of the litigation without trial on the merits." Pt. 3 syl. And, as in the *Tennant* case, the rule in-

volving the application of the doctrine of the balance of conveniences is peculiarly and particularly applicable where a preliminary injunction is sought or granted, for the granting of that kind of injunction is clearly within the discretion of the court. 28 Am. Jur., Injunctions, Section 54. But whether on preliminary or final hearing, the doctrine will not be applied where the wrong is wilful, wanton and unprovoked, or where, as here, the acts complained of are tortious and the plaintiff county court is seeking to preserve a clear legal right. *American Smelting & Refining Co. v. Godfrey,* 158 F. 225, writ of certiorari denied 207 U. S. 597, 52 L. ed. 357, 28 S. Ct. 262; *Mobile & Ohio Railroad Co. v. Zimmern,* 206 Ala. 37, 89 So. 475, 16 A.L.R. 1352; *White v. Harrison,* 202 Ala. 623, 81 So. 565. So we are of opinion that the instant case, involving as it does, tortious, continuous acts on the part of the defendant to the irreparable damage of the plaintiff, and in contravention of plaintiff's clear legal right of control of the airport as provided by statute, the doctrine of the balance of conveniences should not be applied.

We therefore are of the opinion that the trial court did not err in granting the injunction in so far as that injunction inhibited the defendant from using the airport for a flying school and other special activities. The injunction, however, should be modified so as not to prevent the defendant under its certificate of convenience and necessity from using the runways for the purpose of engaging in nonscheduled commercial flying and nonscheduled service for the intrastate transportation of passengers, including emergency landings; and further the circuit court having taken equity jurisdiction for the purpose of awarding the injunction has jurisdiction to entertain plaintiff's claim for damages due to past trespasses, and thus avoid a multiplicity of suits. It is an axiom of equity practice and procedure that where a plaintiff asserts a legal and equitable claim, the former being incidental to and growing out of the latter, a court of equity, having jurisdiction of the equitable claim, will retain it for the adjudication of the legal claim. *Perkins v. Hall,* 123 W.

Va. 707, 17 S.E. 2d 795; *Bell v. Wayne United Gas Co.,* 116 W. Va. 280, 181 S.E. 609. And the rule applies in injunction cases in which legal liability is incidental to the injunctive relief sought. *McMechen v. Hitchman-Glendale Consolidated Coal Co.,* 88 W. Va. 633, 107 S.E. 480; *Forsythe v. City of Wheeling,* 19 W. Va. 318.

For the foregoing reasons we modify the injunction, in the manner heretofore stated, and as modified affirm the decree of the circuit court.

> *Injunction modified and as modified affirmed; cause remanded.*