McGavock v. Morton.

ALEXANDER McGAVOCK ET AL. V. WILLIAM B. MORTON.

FILED JANUARY 5, 1899.   No. 8560.

1. **Contracts.** A concurrence of minds is essential to the creation of a contract, unless in cases of estoppel.

2. ———: ALTERATION. Therefore, a written instrument signed by one party, with the intention that the other shall later sign it, which is changed in any manner altering its legal effect, and by that other signed in its altered condition, does not become binding on the former, unless he learn of and ratify the change; and this although the alteration be made by a stranger.

ERROR from the district court of Douglas county. Tried below before SCOTT, J. *Reversed.*

*Francis A. Brogan* and *Guy R. C. Read,* for plaintiffs in error.

*George A. Magney, contra.*

IRVINE, C.

McGavock and Doll, the plaintiffs in error, were sued by Morton on a contract alleged to have been made by McGavock and Doll with the city of South Omaha, whereby the defendants guarantied the payment by one Davis of laborers employed by him in grading certain streets for the city. It was alleged that the claims of certain of these laborers had been assigned to Morton. The contract sued on was tripartite. Davis agreed to do certain grading according to certain specifications, and was named as party of the second part. The city agreed to pay at a certain rate and in a certain manner, and was named as party of the first part. McGavock and Doll, who were named as parties of the third part, agreed with the city that Davis would perform his contract; and also agreed as follows: "Said parties of the third part hereby guaranty that the said party of the second part will well and truly perform the covenant

29

·hereinbefore contained to pay all laborers employed on said work, and if said laborers are not paid in full by said party of the second part, that the said party of the third part hereby agrees to pay for said labor, or any part thereof, which shall not be paid by said second party within ten days after the money for such labor becomes due and payable, and this provision shall entitle any and all laborers performing labor on the improvements to be done under this contract, to sue and recover from said third parties, or either of them, the amount due or unpaid to them, or either of them, by said second party," etc. The answer contained a general denial and several special defenses. Among the latter was a count specifically alleging that after the defendants had signed the contract, but before it had become operative by acceptance of the city, it had been, without the knowledge or consent of defendants, altered, as hereafter stated. It seems that there existed a contract between the city and Douglas county whereby the latter agreed to pay a portion of the cost of the improvement to which the contract related. It is asserted that this contract was void, but we need not consider that question. The contract sued on provided for paying Davis as follows: "And the said party of the second part further agrees that he will not be entitled to receive payment for any portion of the aforesaid work or materials until the same shall have been fully completed in the manner set forth in this agreement, to the satisfaction and acceptance of the city engineer and committee on streets and alleys and city council. And that he then will receive payment according to the above schedule of prices, in warrants upon the city treasury for the amount herein provided for when the money is received by the city of South Omaha from the county commissioners of Douglas county, as per agreement between the city council and county commissioners of January 27, 1890." There was evidence tending to show that after the contract had been drawn by the city engineer it was

McGavock v. Morton.

signed in his office by defendants, and that it then did not contain the foregoing words beginning "when the money is received by the city of South Omaha." Further, that thereafter those words were inserted by the engineer and the contract then approved by the council. By its terms it was not to become operative until so approved.

If this state of facts existed it was a complete defense to the action. The change was material. As the sureties signed the contract payment was to be made in warrants when the work was completed to the satisfaction and acceptance of the engineer, the committee on streets and alleys, and the council; as the council accepted the contract, nothing was to be paid until the county should pay the city. This substantially changed the legal effect of the contract between the city and Davis, and so changed the obligations of the defendants. It was one thing to agree to pay wages if the principal did not within ten days after they fell due and when the principal was to receive money to meet his obligations when the work was done, and quite another thing to agree to so pay when the principal was not to receive anything until the happening of an independent contingency. Indeed, all the discussion in the briefs as to materiality, and a further discussion as to whether the change was an alteration or a spoliation, are beside the issue, because the theory is not that the contract was altered after it was made, but that the change was made after execution by one side and before execution by the other,—in other words, that because of the change at that time, regardless of who made it, there was never a consensus. The proposition made by the defendants, by signing the contract as it first was tendered, was not accepted by the city when it approved a substantially different contract. Any change which altered the legal effect of the proposal, even if made by a stranger, would under such circumstances prevent the concurrence of minds essential to make a contract.

McGavock v. Morton.

The court in one instruction stated to the jury the nature of the petition alone; that of the answer was nowhere stated. In another instruction the jury was told to find for the plaintiff if he had substantially proved the averments of his petition. It is true that the requirement that the petition be proved would to the technical mind suggest the necessity of proving a contract as therein alleged. But jurymen have not usually such technical minds. The non-existence of a contract by reason of such circumstances as were here relied on was a matter which should have been distinctly placed before the jury, and an instruction appropriate for doing so was tendered by defendants and refused. The evidence was conflicting as to when the change was made, whether before or after the defendants signed, and they were entitled to have that issue submitted to the jury under instructions calling attention thereto.

Lest what has been said as to the tendering of an appropriate instruction should in the further progress of the case be misunderstood, it may be well to say that we mean appropriate under the condition of the evidence then existing. It omitted altogether the element of knowledge of the change or ratification thereof by the defendants. Of course, if they learned of the alteration and assented thereto after the signatures were affixed, the defense would be unavailing; but there was no evidence whatever to show such a state of facts, and there was evidence to the contrary. Therefore the instruction omitting that feature was properly asked as applicable to the evidence then before the jury.

REVERSED AND REMANDED.