O. W. HARRIS, appellee, v. MANNING INDEPENDENT SCHOOL DISTRICT and members of the BOARD of said District, appellants.

No. 48593.

(Reported in 66 N.W.2d 438)

1296

OCTOBER 19, 1954.

Erwin Hansen and Richard Crandall, both of Manning, and L. V. Gilchrist, of Denison, for appellants.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, and Leighton A. Wederath, of Carroll, for appellee.

MULRONEY, J.—Plaintiff brought an action for judgment declaring the contract attached to his petition was a good and valid contract with defendant school district, employing him as an instrumental music instructor for the 1953-1954 school year at a salary of $4600. The school district and school board members answered to the effect that plaintiff altered the contract after the contract signed by the school board president had been submitted to him, that he signed and returned the altered contract to defendants and defendants did not ratify or accept the altered contract, and no binding contract resulted from the transaction. The trial court held for plaintiff on grounds which we will state later, and defendants appeal.

While there is some dispute in the evidence on some points which plaintiff and the trial court seemed to think were material issues, we think the case can easily be decided on evidence which both parties concede is undisputed. The teacher's contract which was submitted to plaintiff provided that the teacher (plaintiff) "agrees to well and faithfully perform the duties of Instr. Music Instructor, and instructor, and such other duties connected with the public schools in said district as may be assigned by the Board * * *." It is conceded the abbreviation "Instr." stands for "Instrumental." This contract, signed by the president of the school board, was turned over to the district school superintendent on or about April 1, 1953, and the superintendent submitted it to plaintiff. The contract also stated: "This Contract shall be without force and effect unless it is in the hands of the board, bearing the signature of said teacher and the president of the board on or before the 10th day of April, 1953." The plaintiff did not sign the contract when the superintendent submitted it to him, which was on April 1st or 2nd, and the superintendent kept it in his office. On April 10 plaintiff called at the superintendent's office, asked for the contract, and when it was produced he signed it after first obliterating with pen and ink the words "and instructor" appearing after the words "Music Instructor." Later, on the

same date, plaintiff was given written notice by the defendant board that it had resolved to reject the contract because the contract he returned "was not in the form originally submitted."

I.  In the trial much seems to be made of the point that the words "and instructor" were a written insertion made by the president of the school board in the contract form that had been typed by the superintendent's secretary from information given her by the superintendent. The superintendent stated he had been given the duty of preparing the contracts for the various teachers, including plaintiff, and he did so and turned them all over to the president. He stated the president kept them overnight but called him that evening to tell him there was an error in two contracts, one of them being the Harris contract. The president offered to return the two contracts for correction but the superintendent told him to make the corrections and he would explain to the teachers why there was some handwriting on them. The president then inserted the words "and instructor" after "Music Instructor" in the Harris contract and the inserted words are the words plaintiff struck out before signing. Plaintiff concedes in his brief: "There is no dispute that the insertion * * * of the words 'and instructor' referred to the duty to teach, in addition to instrumental music, other academic subjects such as Mathematics, English or History, if the Board so required." Plaintiff was licensed to teach academic subjects.

The real basis for the trial court's ruling seems to be his holding that the president. of the school board had no authority to insert the words "and instructor" in the superintendent's draft of the contract. The court seemed to think there was some burden on defendants to show a resolution duly adopted in some board meeting requiring a clause in Harris's contract providing he should teach subjects other than instrumental music. The specific issue is utterly immaterial. There was no obligation on the part of the board president to accept the contract drafts prepared by the superintendent or his secretary. The superintendent was only an employee of the board while the president was the officer of the board charged with the duty of signing and executing a contract that would

bind the board. It was the president's duty to express the will of the board in the proposed contract he would sign and submit to Harris. That he did so is amply demonstrated by the board's refusal to accept the contract with the deletion. If it be thought important there is ample testimony in this record, which we will not bother to relate, showing a majority of the board was of one mind: that Harris's contract was to call for the teaching of academic subjects and that they knew of the insertion in his contract, by the president, before Harris signed. The question of whether the employment contract with the insertion expressed the will of the board is one between the president and the board and the proposed employee cannot justify a deletion by arguing the deleted obligation was not authorized by the board. The question is just the same as if the words "and instructor" were typed in the original draft, or in a redraft after the president called the superintendent's attention to the error, and plaintiff had stricken out the words "and instructor" before signing.

II. The only question in the case is whether the plaintiff's striking out the words "and instructor" constitutes a material alteration. The governing rule is stated in 3 C. J. S., Alteration of Instruments, section 46, as follows:

"In the event that an instrument has been signed by one party with the understanding that the other party is also to sign it, and it is materially altered and signed by the latter in its altered form, it does not become binding on the one who first signed it unless he learns of and ratifies the change * * *."

One part of the trial court's ruling is that the words "and instructor" constituted "surplus matter." The trial court construed the contract without the words "and instructor" as obligating Harris to teach academic subjects. This construction was arrived at by saying the contract as deleted called for him to act as instrumental music instructor, and then follow the general words requiring him to perform "such other duties connected with the public schools in said district as may be assigned by the Board * * *." The trial court in his ruling stated: "The general words following, requiring him to perform such other duties

as may be assigned him, must be construed as requiring him to perform such other duties as an instructor or teacher [of subjects other than music]."

From the above it is quite evident the trial court applied the rule of law that governs in cases involving the effect of an alteration in a completed instrument or contract. In such cases the question is whether the alteration is material in the sense that it vitiates the contract, and the rule is that the alteration to be material must be some change that enlarges the contract or varies its original legal effect. Consolidated Construction Co. v. Begunck, 233 Iowa 463, 477, 9 N.W.2d 390. Where the change in the instrument occurs before its complete execution and there is no ratification by the first signer the question is whether there was a meeting of minds on all of the terms so one can say the contract in its altered form is actually the depository of the agreement between the parties. 3 C. J. S., Alteration of Instruments, section 46; McGavock v. Morton, 57 Neb. 385, 77 N.W. 785; Sherwood v. Merritt, 83 Wis. 233, 53 N.W. 512; Mayer v. First Nat. Co. of Sarasota, 99 Fla. 173, 125 So. 909; North American Life Ins. Co. of Chicago v. Fulton, Tex. Civ. App., 73 S.W.2d 630. This difference is pointed out in 3 C. J. S., Alteration of Instruments, section 46, as follows:

"These cases [involving a change in the instrument before complete execution], however, do not involve the technical doctrine of alteration of instruments which deals with the effect of a change in a completed instrument or contract, but rather such cases are merely applications of the general law of contracts which requires a mutual assent to all of its terms as an essential to a binding contract, and the absence of which prevents a contract from coming into existence in the first place."

In McGavock v. Morton, 57 Neb. 385, 387, 77 N.W. 785, where the contract was altered after one had signed, the court said: "Indeed, all the discussion in the briefs as to materiality, and a further discussion as to whether the change was an alteration or a spoliation, are beside the issue, because the theory is not that the contract was altered after it was made, but that the change was made after execution by one side and before

execution by the other—in other words, that because of the change at that time, regardless of who made it, there was never a consensus."

The question of what is a material alteration before complete execution is not solved in the same manner as is the question of a material alteration after complete execution. In the latter case the inquiry is answered by a finding that the legal effect was changed or unchanged by the alteration. In the former, where the inquiry is as to whether there was a meeting of minds on all of the terms, to see if there was a contract, the court cannot construe the instrument before and after the alteration as if it were a contract, and then say there was or was not a meeting of the minds depending upon a construction that the alteration did or did not change the legal effect of the instrument. To so hold would mean the second signer could by addition or deletion change the composition and language of the contract to the point where it would not express the mind of the first signer, even though a court might some day hold the changed instrument would have had the same legal effect if they had both signed it. Nothing is firmer in the law of contracts than the rule that there must be a meeting of minds before the contract comes into existence. In written contract negotiations the first signer expresses his mind when he signs the writing. If anything of substance, going to the obligation of the contract—anything that the first signer reasonably considered important—is deleted or changed before the second signer signs, there is no meeting of minds and no written contract exists. The material alteration of a proposed contract before complete execution is one that is more than trivial.

■ Without agreeing or disagreeing with the interpretation the trial court placed on the alleged employment contract here involved after the deletion, we hold there was a material alteration before complete execution and no binding contract existed. The alteration which plaintiff made was not trivial. He struck out language to express his obligation which he concedes would clearly obligate him to teach academic subjects. He struck out language which the employer considered of the utmost importance to describe his obligation. The employer-district clearly had a right to insist on this specific description of the teacher's

duties, even though the same obligation to perform such teaching duties might be implied by other general language in the contract. To hold the proposed employee may strike specific language describing his duties and allow his obligation to rest in a general clause is to open the door for a controversy that the employer sought to close. The alteration was one of substance, and it is clear there was no meeting of minds on the writing plaintiff introduced as a written contract. No binding contract resulted. The cause is reversed for judgment in accordance with this opinion.—Reversed.

BLISS, OLIVER, WENNERSTRUM, SMITH, HAYS, THOMPSON, and LARSON, JJ., concur.

GARFIELD, C.J., dissents.